lumber sold and delivered for each job was actually used on that job.

The judgment is affirmed.

(118 So. 142)

No. 29267.

LANDRY v. GULF STATES UTILITIES CO.

GILL & TROTTI, Limited, v. SAME.

July 2, 1928. Rehearing Denied July 20, 1928.

Pujo, Bell & Hardin, of Lake Charles, for appellant.

Vance Plauche, of Lake Charles, for appellee Landry.

McCoy, Moss & King, of Lake Charles, for appellee Gill & Trotti, Limited.

BRUNOT, J. Daniel J. Landry and Gill & Trotti, Limited, filed separate suits against the Gulf States Utilities Company. The prayer of each plaintiff is for a rule to show cause why a preliminary injunction should not issue, restraining the defendant from maintaining poles upon and operating high voltage electric lines across their respective properties, and why it should not be commanded to remove its poles and electric lines therefrom, and, after a hearing, that the preliminary injunction be perpetuated, and that a judgment be rendered in favor of each plaintiff for specific sums of money, with legal interest thereon from judicial demand, for the use and occupancy of their respective properties, and for further specific sums, per month, with like interest, from the date the suits were filed.

The cases were consolidated and tried together. The rule was heard; preliminary

writs of injunction issued, the case was tried on the merits, and, from a judgment perpetuating the preliminary writs of injunction, but suspending the operation thereof for 30 days after it became final, and reserving the rights of the plaintiffs to reinstitute their actions for the use, occupancy, and rental of their properties, the defendant appealed.

The questions presented are whether a winding trail along the south bank of the Calcasieu river from the north end of Ryan street, in the city of Lake Charles, to the old site of Hortman's Ferry, is a public road or city street, and, if so, whether the road or street traverses the property of the plaintiffs or of either of them.

The defendant admits that the property described in the petitions is owned by the respective plaintiffs; that no formal dedication of any road or passageway over either of said properties was ever made by any of the owners thereof; that the property of both plaintiffs has been within the corporate limits of the city of Lake Charles since 1899; that defendant did not attempt to show by any proof, direct or indirect, that the city of Lake Charles had ever claimed any right of way over the property of either plaintiff for a street, alley, or public place; and that the defendant failed to show by proper proof that its poles were placed upon any used road or passageway over the property of either of the plaintiffs, or that the city of Lake Charles had ever expended any money whatever in acquiring, laying out, or maintaining a road or passageway over the property of either plaintiff.

All other alleged facts are admitted by defendant, subject to modifications, except the following three, which are denied, viz.: That defendant illegally took possession of the property of plaintiffs and subjected it to its own uses without the consent of either plaintiff and against the protest of both; that no road or passageway along the banks of Calcasieu river has ever been established, grad-ed, worked, or used by the public across the property of either plaintiff; and that neither plaintiff has ever granted a right of way to defendant on the property in controversy, nor to any one else, for use as a public road or other purposes.

In the alternative, defendant avers that, if the passageway over the plaintiff's lands is not a public road or street by reason of tacit dedication, or acts of the police jury, then the lands are burdened with a public servitude under the police power of the state and Civil Code, arts. 455, 665, 707.

Defendant filed a special plea and exception to the corporate existence of the plaintiff Gill & Trotti, Limited, to which said plaintiff filed an answer and plea of estoppel. The minutes show that the exception was overruled.

Plaintiff Daniel J. Landry pleaded the unconstitutionality of C. C. art. 765, as amended by Act 25 of 1904, in so far as it purports to grant to the public, by arbitrary action of the police jury, the right to take private property for public use without due process of law and without just and adequate compensation first having been paid therefor. This plaintiff also pleaded the unconstitutionality of R. S. § 3368, as amended and re-enacted by Act 220 of 1914, in that it violates section 2 of article 1 of the Constitution of 1921, article 167 of the Constitution of 1913, and the Fifth and Fourteenth Amendments of the Constitution of the United States. The pleas were not considered or passed upon for the evident reason that judgments were rendered in favor of both plaintiffs granting them preliminary injunctions and finally perpetuating said preliminary injunctions.

 We have read the record and briefs, together with the authorities therein cited, and find that the learned trial judge has correctly summarized the facts, and his conclusions are, in our opinion, so sound and legal that we adopt his reasons for judgment as our own. Judge Cline says:

"The first question is whether a public road or street exists near the south bank of the Calcasieu river, from the north end of Ryan street, in the city of Lake Charles, to the old site of Hortman's Ferry, and, if so, whether it traverses the property of plaintiffs.

"Public roads are servitudes. C. C. art. 658.

"The supposed road is a winding trail, through brush and among trees. If ever improved to any extent within recent years, the work was disconnected in point of location as well as time. No natural or artificial landmarks or markings designate its location. At points it approaches within a few feet of the river bank, and at other points retreats as much as 200 feet. The description of such a road is sufficient proof that its use has been rare, and that, if it constitutes a servitude at all, the servitude is discontinuous and nonapparent. But even if apparent, and also discontinuous, it can be established against the property owner only by title. C. C. art. 766.

"If such a servitude be considered continuous and apparent, it might be prescribed in 10 years, but as to roads, this prescription is regulated by C. C. art. 765, as amended by Act 25 of 1904, which provides for the acquirement by the public of a servitude 40 feet wide by the open and public use of a road for a space of 10 years after it has been declared a public highway by the police jury. It is necessary to determine, therefore, whether there was ever a title to the servitude in the public, and, in the alternative, whether there has been an acquirement by 10 years' open and public use after declaration by the police jury.

"The earliest regular traffic crossing of the Calcasieu river in the vicinity of Lake Charles was by means of a ferry. In 1846 the police jury identified it as 'formerly known as Buchanan's Ferry.' It was last known as Hortman's Ferry. It fell into disuse in the 1880's and when a steam ferry was established to ply across the lake, regular travel by the old road was abandoned. In emergencies, as in 1916, for a few months, the ferry was re-established and operated during the construction of the highway bridge over the river south of the lake. In that year the police jury appropriated $150 for Hortman's Ferry road, and it was made temporarily passable for traffic.

"The old ferry was operated under legislative and police jury franchises, one consideration being that the grantee 'keep the road through the swamp on the east side of the Calcasieu to the foot of the hill in good order.' P. J. Proceedings, December, 1846; December, 1856; March, 1857; February, 1866; March, 1874.

"In October, 1871, the police jury appointed overseers for the road from Hortman's Ferry

to the Mermentau river. In July, 1876, it ordered a change in the location of a road connecting with the 'present Hortman's Ferry.'

"No police jury action affecting the road is shown except the minute entry of April, 1889: 'That the roads so laid out and adopted by the police jury, and all roads which shall have been opened and in common use for 12 months previous to April 17, 1889, shall be deemed public roads.'

"Whether this action was intended to apply to the Hortman Ferry road is questionable. At that time, according to the testimony of Hon. Harry Geary, present mayor of Lake Charles, it had not been in common use for three or four years; and it is highly probable that the jury had in mind the validating of roads officially 'laid out and adopted.' That was a period of rapid development and of the establishment of many new roads. A disused road, through a difficult and uninhabited swamp, left out of the new and customary routes of travel, and neglected by the jury, so far as the records show, since its last action in July, 1876, could not have been intended to be readopted as part of a newer and much more efficient road system.

"The only possible route for travel from Lake Charles to Hortman's Ferry was along the south bank of the river, across the land now owned by the plaintiff. It is spoken of in the old records as 'the swamp on the east side of the Calcasieu'; but there exists a low ridge at the bank of the river, sloping southward to the swamp for distances varying from 50 or 60 feet to 200 feet or more. It was along this ridge that travel necessarily found its sinuous way from the 'foot of the hill' to Hortman's Ferry.

"It will be seen that there has never been a dedication or expropriation of a right of way along this route. There is no title, therefore, in the public, unless by prescription, or by the right of public use of the banks of navigable streams. The prescription of 10 years begins when 'it has been declared a public highway by the police jury.' The only such declaration is the one in 1889, which is not sufficiently shown to apply to the Hortman Ferry road.

"This conclusion is further enforced by the fact that for more than 25 years the locality in question has been within the corporate limits of the city of Lake Charles and that the city has never during that long period claimed rights to a street at the location of the old road. Public roads which become incorporated in municipalities retain their public character; but they must first be public roads, and, if their character is doubtful or not fully established, the municipal authorities by long years of official action or inaction may abandon the doubt-

ful right, and fix the character of the road as private.

"There remains the contention that the public possesses a right of passage analogous to a public road 60 feet in width along the bank of a river. But this is a right to establish a public road. Until the right is exercised by the public authorities, the 60-foot space is not a public road. It is a space left by adjacent owners for 'the making and repairing of levees, roads and other public or common works.' C. C. art. 665.

"At any rate, it is not clear that an electric power line, belonging to a private corporation, is a public or common work, entitling it to possession of any part of the 60-foot space along navigable streams. Bradley v. Pharr, 45 La. 430.

"Irrespective of the considerations already mentioned, the location of the supposed road is not shown to conform to the location of any previous supposed public road, nor to be within 60 feet of the river bank, except at one or two points.

"It is found, therefore, that no public road or street exists upon the property of the plaintiffs, and that its occupancy and use by the defendant company is unauthorized.

"The Gulf States Utilities Company is a corporation engaged in furnishing light and power to the public, and possessing the right of eminent domain for the construction and maintenance of its necessary facilities. Any considerable interruption of its service to the public would be disastrous to the communities which it serves. The decree should be written with these considerations in view."

For the reasons stated, the judgment appealed from is affirmed at appellant's cost.