258 So.2d 562 (1972)
Samuel L. WOMACK et al.
v.
The TRAVELERS INS. CO. et al.
No. 8682.
Court of Appeal of Louisiana, First Circuit.
January 31, 1972.
Rehearing Denied March 22, 1972.
Writ Refused May 1, 1972.
*564 W. Henson Moore and E. Leland Richardson, Dale, Owen, Richardson, Taylor & Mathews, Baton Route, for J. H. Jenkins Contractor, Inc. and Travelers Ins. Co.
Henry D. Salassi, Jr., and Victor Sachse, Breazeale, Sachse & Wilson, Baton Rouge, for Samuel L. Womack, and others.
Gerald L. Walter, Jr. and Carlos G. Spaht, Kantrow, Spaht, Walter & Weaver, Baton Rouge, for Craig, Laird, Pearson & Fournet and Continental Cas. Co.
Edward W. Gray, Percy, Macmurdo & Gray, Baton Rouge, for Hartford.
Calvin E. Hardin, Jr., Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for Hanover.
Frank J. Gremillion, Baton Rouge, for Craig, Laird, Pearson & Fournet.
Joseph F. Keogh, City Parish Atty., Baton Rouge, for City-Parish.
Ashton L. Stewart, Laycock & Stewart, Baton Rouge, for Plantation Pipeline Co.
John Tharp and Tom F. Phillips, Taylor, Porter, Brooks & Phillips, Baton Rouge, for Plantation Pipeline and Travelers Ins. Co.
Before LOTTINGER, SARTAIN and ELLIS, JJ.
SARTAIN, Judge.
This case is one of four consolidated cases, three of which have been appealed, for personal injuries, wrongful death and property damage arising out of an accident which occurred on August 18, 1967. The other two cases appealed are Plantation Pipeline Company v. J. H. Jenkins Contractor, Incorporated, et al., Number 8683 on the docket of this court, 258 So.2d 571, and Hanover Insurance Company v. Travelers Insurance Company et al, Number 8684 on the docket of this court, 258 So.2d 571.
In this case, the plaintiffs are the surviving spouse and children of Virgil V. Womack, Sr., who died as a result of injuries sustained when his house was destroyed in an explosion and fire. His wife also sustained injuries in the accident and sues for those damages as well as for substantial damage to the house and surrounding property, including the loss of some livestock.
Of the several defendants sued, the trial court cast in judgment only J. H. Jenkins Contractor, Inc., and its insurer, The Travelers Insurance Company. These defendants appealed contesting the finding of liability and also seeking a reduction in the awards made to the plaintiffs. The plaintiffs also appealed from that portion of the judgment dismissing their suit as to the other defendants and also seek an increase in the amount of the awards.
Except with respect to one item of damages awarded, which all parties agree resulted from an oversight by the trial judge, and except to the rate of interest set by the court on all awards in these three consolidated cases, we affirm the judgment in all respects. We are favored with extensive, detailed written reasons for judgment, a substantial portion of which we adopt as written in this opinion:
"On the morning of August 18, 1967, a piece of earth moving equipment being used in the construction of Joor Road in the Parish of East Baton Rouge ruptured an underground high pressure gas transmission line in front of the Virgil Womack property resulting in an explosion and fire causing the destruction of the Womack homestead and grievous injuries to both Mr. and Mrs. Womack, ultimately terminating in the death of Mr. Womack. Four consolidated suits emanating from the effects of the holocaust are now before this court for decision. Recovery of damages for the Womacks and others sustaining losses is assured and the principal determination to be made is who will bear the responsibility for this grim tragedy.
"As one of the projects provided for under the recent Capital Improvement Program, *565 a contract was entered into in December of 1965 between the Parish of East Baton Rouge and Craig, Laird and Pearson, Inc., Consulting Engineers, for the design and preparation of construction plans for the improvement of Joor Road from the McCullough Road to the Greenwell Springs-Port Hudson Road. (Womack Exhibit #2) These plans were completed and accepted by the Department of Public Works for the Parish of East Baton Rouge on February 14, 1967. (Plantation Exhibit #4). Following the completion of the plans and their acceptance, a contract for the construction of the improvement of Joor Road was awarded by the Parish of East Baton Rouge to J. H. Jenkins, Contractor, Inc. (Plantation Exhibit #5). During the course of construction of the road an employee of Jenkins, while cutting a ditch with a scraper, ruptured Plantation Pipe Line's twelve inch gasoline transmission pipe line which crossed under the Joor Road in front of the Womack residence. A cloud of gas drifted with the wind to their home where it immediately ignited causing an explosion and fire. Both Virgil Womack and his wife, Lottie Batts Womack, were engulfed in the fire and suffered serious burns and other injuries.
"Primarily, the Womacks rely on the doctrine of res ipsa loquitur as a basis for recovery against the various named defendants; however, in the alternative they contend that these defendants: J. H. Jenkins, Contractor, Inc., as the contractor (hereinafter described as `Contractor'), Craig, Laird and Pearson, Inc., as the design engineers (hereinafter described as `Engineers'), the Plantation Pipeline Company, as owner of the transmission line (hereinafter described as `Plantation'), and the Parish of East Baton Rouge, as the governing body contracting for the project (hereinafter described as `Parish') were all guilty of specified acts or omissions constituting negligence which proximately caused the explosion. To the extent that the blame is foisted on other defendants excluding itself, the Contractor joins in these contentions and, in addition, has named McLord's Aero service, Inc. in a Third Party Demand, alleging that it failed to notify Plantation, with whom it had a contract to fly the pipeline right of way, as to the existence of road building activity in the vicinity of Plantation's right of way. While the court is not satisfied that the doctrine of res ipsa loquitur is appropriate in this case, and examination of the applicability of the doctrine will not be made because of its determination that negligence attributable to one of the defendants is manifest.
"Essentially, the negligence ascribed to the several defendants is described by the plaintiff as follows: It is contended that the Contractor through its agents, servants or employees operated road grading machinery in such a way as to strike and rupture the pipeline despite the fact that the existence and location of the pipeline was either known to them or should have been known to them. It is further contended that the Engineers were negligent in failing to properly mark the location of the pipeline on the construction plans and in failing to notify Plantation as called for under its contract. Plantation is alleged to have been negligent in failing to see that the location of its pipeline was properly marked. Finally, the Parish's liability is based upon the allegations that it did not properly supervise the engineers in the preparation of the construction plans and in not complying with the prerequisites of R.S. 38:2219 requiring governmental bodies to notify in writing all utilities, communication and public service companies which may have underground installations in the right of way of impending construction projects.
"At the outset let the Court make it abundantly clear that it has no reservations concerning the liability of the Contractor for the occurrence of the rupture of Plantation's gas line. Under the provisions of its contract with the Parish, the Contractor was required to become familiar with the plans and the site itself in order to determine existing structures, sub-surface obstructions *566 and to provide protection for pipes, drains, etc. Particularly, there are several provisions in its contract establishing its responsibility in this respect:
"CONFLICT WITH SUB-SURFACE OBSTRUCTIONS: Care shall be taken by the Contractor not to injure any oil, gas or water pipe, sewer drain, or conduits or other underground structures known to exist in the proximity of the work of this contract ... (Page Two Special Provisions, Plantation Exhibit #5)
and further:
"* * * The Contractor shall be responsible for notifying the owners of these utilities in advance of any required moving and/or adjustments so as to allow the owners of the utilities ample time to schedule work forces to perform the work. * * *
"The Contractor will be responsible for any damage done by him to utility structures where the existence of the facility or structure has been made known to the Contractor prior to his working in the immediate vicinity. (Page Four of Special Provision, Plantation Exhibit #5)
"But moreover, aside from the responsibility which the Contractor had insofar as discovering and communicating information concerning any underground obstructions present, the Contractor, through his job supervisor, did have actual knowledge of the presence of the Plantation pipeline in the immediate vicinity of the construction project. Herman Morgan, a man with a wealth of practical experience in road building, was Jenkins' supervisor on the Joor Road project. He acknowledged not only in his testimony in court, but in a previous deposition, that he had seen the notation `Plantation pipeline' on the construction plans and was well aware of its existence. He further admitted he did not tell anyone about the presence of the pipeline. The employees directly under him said that they relied on Morgan to alert them to any pipeline right of ways or other possible underground obstructions. Morgan made no inquiry of either the City-Parish project engineer or of Plantation as to whether the pipeline posed any risk or threat in the construction of the road. Mr. J. H. Jenkins, Sr., candidly acknowledged that he did not see the notation of the pipeline on the plans, but had he or his employees seen the notation on the plans, he would have gotten in touch with the project engineer or the utility owner because he recognized it as a warning or sign of danger dictating the need for caution. His attitude in this regard is consistent with the opinion of all of the engineers who testified on the trial to the effect that the indication of a pipeline on a set of plans is a `red flag' calling for the utmost in care and precaution on the part of everyone involved. Consequently, the knowledge of Morgan and his failure to act must be considered as negligence imputed to his employer, Jenkins."
At this point, we feel that an amplification should be made of the duty of the Contractor under the contract. As noted by the trial judge, Mr. Jenkins did not see the notation when he reviewed the plans preparatory to submitting a bid and commencing work. It is argued that the notation was made on the extreme left side of the particular page and was relatively inconspicuous, considering its importance. Nevertheless, it was within the heavy blue-line rectangle containing all the plan data and it was not the only notation so located on the same page: directly above it was a notation, "Rough grade existing Road" with an arrow pointing to approximately the same area of the plan. The failure of Mr. Jenkins to see the pipeline notation, although he should have seen it, led to his failure to notify Plantation, as required by the contract clause quoted above. Further, he is charged with constructive knowledge of the existence of the facility prior to the commencement of the work in the vicinity and under the contract he is responsible for the damage done by his employee. In these respects, the responsibility of the contractor is independent *567 of and broader than that of the Engineers or Parish in notifying the owner of an affected structure or facility. Whether the duties of the Engineers and the Parish were to communicate the existence and hazard of the pipeline or only the existence of it, the Contractor had an independent contractual duty to determine the hazard once the existence of the facility was known or should have been known.
The trial judge continued as follows:
"The remaining parties to the suit, being the Engineers, the Parish, and Plantation, as well as the Third Party Defendant, McCord's Aero Service, Inc., were named as defendants predicated upon the contention that they failed to furnish an adequate warning that the pipeline constituted a hazard to the construction of the road. Therefore, the gravamen of the complaint against them deals with the sufficiency or lack of notice to the Contractor, being the agency which was constructing the improvement and which caused the actual occurrence. Absent knowledge on the part of the Contractor as to the existence of the pipeline, the Court believes that a sound case could be made against the Engineers and the Parish in that they failed in regard to the respective duties owed by each of them. But no useful purpose would be served in documenting their deficiencies in failing to fully signal the presence of the pipeline and to bring it to the attention of the Contractor. Suffice it to say that the Contractor, through its employee, was indeed apprised of the possible conflict and yet neglected to take proper care and precaution. The Contractor's inaction in this regard constitutes the efficient cause in fact of the occurrence without which it would not have happened. In the Court's opinion, its negligence superceded any which may have been found on the part of the Engineers and the Parish.
"Having disposed of the question of liability, the Court now addresses itself to the various claims set forth in the respective suits. Suit No. 128,336 [No. 8684 on the docket of this court] represents the subrogation claim of the Hanover Insurance Company to recover the sum of $7,000.00 which it paid to the Administrator of the Succession of Virgil Womack under the provisions of its fire insurance policy for the destruction of the Womack residence. The amount of the claim has been stipulated to by the parties to the suit and is therefore established as being due by the defendants, J. H. Jenkins Contractor, Inc., and its insurer, The Travelers Insurance Company.
"Suit No. 128,718 [No. 8683 on the docket of this court] represents a claim by the Plantation Pipeline Company for the losses sustained by it as a result of the rupture of its twelve inch line. Since no negligence assessable to this plaintiff was found by the court, it too is entitled to recover as against Jenkins and Travelers. Essentially Plantation's demand may be divided into the cost of fighting the fire and repairing the transmission line, and for the loss of product discharged through the rupture in the line. Supporting testimony and invoices substantiate all of its claim of $23,579.69; however, there are three items included which the court believes should be disallowed. The first two relate to a 15% overhead charged on labor and materials furnished by Plantation in fighting the fire and repairing the rupture. These sums amounted to $364.42 and $398.91, respectively, or a total of $763.33. In addition, the amount of $153.22 representing travel expense of the company's counsel from its home office in Atlanta, Georgia, is not granted in that investigative expenses toward the preparation of a law suit are not generally allowed. Therefore, the total amount awarded, after making the proper deductions, is $22,663.44.
* * * * * *
[Omitted is the disposition of the case not appealed.]
*568 "Finally, Suit No. 128,784 [the instant case, No. 8682 on the docket of this court] represents the claims of the surviving widow and four surviving children of the decedent, Virgil V. Womack, Sr. Mrs. Lottie B. Womack has a claim for not only her own injuries, but her claim as the surviving widow for the loss of her husband and special damages sustained by the community existing between her and her husband. Samuel Womack, Virgil V. Womack, Jr., Libby Amanda Womack Millican and Louis M. Womack sue for the loss of their father.
"There existed a close knit family relationship among the Womack parents and their children. The children were devoted to their father and mother and visited them frequently, and particularly Mr. Womack's sons assisted their father in working his cattle farm. Testimony of neighbors attested to the high regard and esteem in which the family was held in that sector of the community. It is fair to state that the Womack family is the type of family which has heretofore constituted the strength of the fabric which has held our nation together and made it great.
"Mr. Womack was a retired employee of Standard Oil Company however he was an extremely active person at the time of his death. He raised cattle on an approximately 500 acre tract he owned on the Joor Road. Mr. Womack was 65 years of age at the time of his death and had been married to his wife for approximately 46 years.
"At the time of the rupture of the pipeline, Mr. Womack was working out in the yard and Mrs. Womack was just coming out on the porch. As a result of the explosion and fire Mr. Womack sustained first, second and third degree burns over more than 50% of his body. Mrs. Womack, while not quite severely burned, suffered a fracture of the right ankle and a sprain of the left ankle. She and Mr. Womack were both hospitalized in the Baton Rouge General Hospital and treated by Doctors J. C. Werner and Arthur A. Mauterer.
"Mr. Womack lived for one month to the day following the explosion. His stay at the hospital was marked by extensive treatment for his severe burns. According to the testimony of the attending physicians, his nurse and family, Mr. Womack remained conscious the entire time during his hospital confinement. Considering the seriousness of his burns and the constant cleaning and dressing procedures undertaken as treatment, it is obvious that Mr. Womack must have suffered intense pain and discomfort as a result of his injuries. Complications set in on September 7, 1967, and his condition worsened and finally on September 18th he died of heart failure.
"Mrs. Womack suffered 25 to 30% first and second degree burns about her body which required treatment, but not as extensively as that of Mr. Womack. The fracture of her right ankle was immobilized and her hospitalization continued until October 4, 1967, when she was discharged. Dr. Werner testified that her burns have healed satisfactorily; however, there still remains some sensitivity. The Court observed that the scars on her arms were quite noticeable, but were not grotesque in appearance. Mrs. Womack had an infection of the urinary tract following her hospitalization which Dr. Werner associated with her recovery period in the hospital. In addition, Mrs. Womack said that she still had some difficulty in the use of her right ankle. In regard to her injuries, Dr. Werner estimated her disability originally at 40% and indicated that her disability at the present time may have been reduced to 20%, but in any event she now has reached maximum recovery. Although Mrs. Womack has indeed made a remarkable recovery, the effects of the ordeal on her physical condition were and are considerable.
"The Court has given considerable thought in regard to the items of damages sought by the plaintiffs, and recognizes *569 those elements of damages such as: the pain and suffering of Virgil V. Womack, Sr., prior to his death; loss of love and affection sustained by Mrs. Womack and her children as a result of his death; loss of future support to Mrs. Womack; and Mrs. Womack's claim for her own injuries. Rather than breaking down these elements of damages into artificial categories as is conventional in these matters, the court believes that a sensible and reasonable approach toward fixing damages is to award a gross sum as damages for each plaintiff, exclusive of special damages. Therefore, the court is of the opinion that the evidence warrants a finding as to damages to be awarded each of the plaintiffs in this case as follows: Mrs. Lottie B. Womack $100,000; Samuel L. Womack$15,000; Virgil V. Womack, Jr.$15,000; Mrs. Libby Womack Millican$15,000; and Louis M. Womack$15,000.
* * * * * *
[Omitted is an itemized list of stipulated funeral and medical expenses incurred by plaintiffs.]
"The only item of [the above omitted] special damages which has been seriously questioned by the defendant relates to amount of the Baton Rouge General Hospital bill paid by Medicare. As pointed out by counsel for the plaintiffs, the jurisprudence is to the effect that a plaintiff's tort recovery is not diminished because of payments made through insurance benefits received from other collateral sources independent of the wrongdoer's procuration or contribution. See Hall v. State of La., through Dept. of Highways, 213 So.2d 169 ([La.App,] 3rd Cir. 1968) Writ refused, [252 La. 959], 215 So.2d 128.
"Further in this regard, it has been held that where a charity hospital did not intervene in a suit under R.S. 46.8 et seq., an award to the plaintiff for the medical expenses of hospitalization was proper. See Leonard v. Travelers Insurance Company, 183 So.2d 447 ([La.App.] 2nd Cir., 1966). Also Pea v. Smith, 224 So.2d 37 ([La. App.] 1st Cir., 1969). Apparently there are no Louisiana cases in point, but using the foregoing cases as a criteria, it would appear that there is justification for requiring the tort feasor to satisfy those medical expenses incurred, though not paid. The total funeral, medical and other expenses therefore amount to $20,788.93.
"As a result of the fire and explosion, the Womack's house and most of the farm buildings were destroyed. In addition, the trees and shrubs in the vicinity of the house were ravaged to the extent that the majority have died leaving a scene reminiscent of a wartime battlefield.
"Generally speaking, if property or improvements cannot be restored, the value to be established as damages should be the cost of replacement, less depreciation. Davis v. Roberts, 194 So.2d 772 ([La.App.] 1st Cir., 1967). The Womack home, while an old house, had been completely remodeled shortly before the fire and was in excellent condition. In addition, the barns and other outlying farm structures, including the fences, were in fine condition before the fire. Two contractors, John Moore for the plaintiffs and Lucius Odom for the defendants, Jenkins and Travelers, testified concerning the replacement cost of the house and outbuildings. Although very qualified, both men were at a distinct disadvantage in that neither had inspected or were familiar with the home before the fire. Although there was not a significant difference in their estimates, in the court's opinion Moore's estimate, though based on 1970 costs was the more informed of the two estimates. He estimated the cost of reconstruction of the house at $27,620.00 and $19,573.50 for replacement of the other farm buildings and fences.
"Moore's estimates did not include any deduction for depreciation and accordingly the court deducts a sum roughly equivalent to 10% on the house and 30% on the other structures to reach the value of these improvements. Consequently, the *570 value determined for the house is $24,800.00 and $13,700.00 for the other farm structures."
At this point, we note that the trial judge inadvertently failed to deduct from the award for the damage to the house the sum of $7,000.00 which was recovered by the Wamacks from their insurer. This portion of the judgment will be amended to limit the recovery for the house to $17,800.00.
We continue with the opinion of the trial judge:
"The plaintiffs have made a substantial demand for the loss of trees and shrubs and submitted a leading expert in the field of forestry, Frank W. Bennett. While the court readily acknowledges that Mr. Bennett is well qualified to speak on trees and their values, nonetheless, as pointed out by the defendants, he did not follow the jurisprudential rules in regard to obtaining a proper value. The general test for the value of trees is the measure of the difference in the value of the property with and without the shade or ornamental trees. Davis v. Chicago R. I. & P. Ry. Co., 13 So.2d 389, ([La.App.] 2nd Cir. 1943). Actually Bennett acknowledged he did not make a study of land values and his estimate of $10,702.00 for the value of the trees obviously is in excess of the value of the land alone upon which the trees were located. Considerable discretion is left to the trial judge in these matters and the court believes that the sum of $2,500.00 for the loss of trees and shrubs is a more realistic and reasonable amount. See City of New Orleans v. Shreveport Oil Co., 128 So. 35, 70 [170] La. 432 (1930). Also Morgan v. Dixie Electric, 112 So.2d 315, ([La.App.] 1st Cir., 1959).
"In addition to the destruction of the improvements and vegetation in the area, the Womacks lost a number of their cattle in the fire. A veterinarian, Dr. Donald Winkler, who was familiar with the Womack's herd of cattle testified as to their worth. While there were some definite questions raised about his valuation of some of the animals, in the absence of any opposing testimony of a qualified expert, the court is of the opinion that the value of $11,130.00 set by him must stand."
After making the awards to the several plaintiffs in the several consolidated cases arising out of this accident, the trial judge ordered that those awards should bear interest at the rate of 5% per annum from the dates of judicial demand until July 29, 1970, the effective date of Acts 1970, No. 315, which raised the rate of legal interest, and at the rate of 7% per annum thereafter until paid. The latest cases interpreting this Act have held that under L.R.S. 13:4203 the legal interest in ex delicto cases attaches from the date of judicial demandnot from the date of judgment. Hebert v. Travelers Insurance Company, 245 So.2d 563 (2nd La.App. 1971), writ refused; Vonderbruegge v. Bethea, 250 So.2d 407 (1st La.App.1971). Legal interest is a matter of substantive law. Williams v. Petroleum Helicopters, Inc., 234 So.2d 522 (3rd La.App. 1970), writ refused. And a change therein should not be given retroactive effect unless the legislature so provides. This judgment accordingly will be amended.
Accordingly, and for the above and foregoing reasons, the judgment of the trial court is amended to reduce the award in favor of Mrs. Lottie B. Womack from $181,918.93 to $174,918.93 (representing the insurance proceeds recovered by her for damage to her house) and the judgment is further amended to provide that all awards shall bear interest at the rate of 5% per annum from date of judicial demand until paid. As amended, the judgment is affirmed, at costs of the defendants-appellants, J. H. Jenkins Contractor, Inc., and The Travelers Insurance Company.
Amended and affirmed.