303 So.2d 530 (1974)
Johnny CUROLE
v.
Freddie ACOSTA and Dennis Collins d/b/a Dennis Collins Trucking Company.
No. 9994.
Court of Appeal of Louisiana, First Circuit.
November 12, 1974.
*531 Edward T. Diaz, Golden Meadow, for appellant Johnny Curole.
Wm. M. Lucas, Jr., New Orleans, for defendant Freddie Acosta.
Larry P. Boudreaux, New Orleans, for appellee Dennis Collins.
Before LANDRY, BLANCHE and NEHRBASS, JJ.
BLANCHE, Judge.
Plaintiff, Johnny Curole, instituted this suit to recover damages to his property resulting from a land-clearing operation conducted by defendants, Freddie Acosta and Dennis Collins d/b/a Dennis Collins Trucking Company.
The trial court rendered judgment for plaintiff and against defendant Acosta in the sum of $750 plus expert fees and costs, dismissed plaintiff's suit as to defendant Collins, and also dismissed the third party demand filed by Acosta against Collins. From this judgment plaintiff has appealed, seeking an increase in the award of $750 for damages to trees, shrubbery and land and also requesting $238.75 to replace 1,320 feet of barbed wire fence allegedly torn down by defendants. Defendant Acosta has also appealed, asking for a reversal of the award to plaintiff and the granting of judgment on his third party demand against the co-defendant Collins. We affirm.
Curole, a resident of Galliano, Louisiana, owned a tract of land in Cut Off, Louisiana, near Bayou Lafourche and Louisiana Highway 1. The tract was 48 feet wide, beginning 400 feet west of Louisiana Highway 1 and running in a westerly direction to the 40 Arpent Line. Curole's only access to the highway was by servitude across property owned by his sister. At the time this action arose, Curole was not living on the property, nor were any buildings or other improvements located thereon. The last use of the property was for the purpose of gardening in 1963. On the northern boundary of Curole's property lies the defendant Acosta's property, which fronts on Louisiana Highway 1.
In August of 1968 Acosta contracted with Collins to clear a right of way by means of a bulldozer along the property line between Acosta and Curole. Acosta met with Harris Dufrene, Collins foreman, on the site and showed him the work that had to be done, representing to him that Acosta had obtained permission for the bulldozer to make its turn-around on Curole's property. Ernest Danos, another employee of Collins, actually operated the bulldozer, following the instructions of Acosta which were passed on to him by Dufrene. Curole denied giving permission to Acosta to conduct the land-clearing operation on his property.
Plaintiff contends the trial judge erred in not awarding him $238.75 to replace a barbed wire fence allegedly destroyed by defendants which ran along his property line. Both Danos and Dufrene testified the fence was in such disrepair that, in effect, it looked like no fence at all. In his Written Reasons for Judgment the trial judge found that Curole had failed to establish that the fence was in any condition other than total disrepair. From the record we find no error.
Plaintiff further contends the trial judge erred by not utilizing the replacement value of the trees and shrubs as the measure of damages, relying on the expert testimony of a horticulturist, Cyril K. Banting, that $22,548 represented the replacement value of the trees and shrubs. The defendant Collins countered with a method of evaluation recommended by the National *532 Shade Tree Conference, as explained by his expert, Dr. Donald Ayo, who tendered an impressive list of credentials. Dr. Ayo valued the damaged trees at $1,296.56. The expert testimony of the realtor, Alfred Robichaux, Jr., indicated the value of plaintiff's entire tract of land was $2,550.
Replacement value is not the criterion for damages where trees and shrubs are concerned. McBride v. Duckworth, 232 So.2d 122 (La.App. 2nd. Cir. 1969), Davis v. Chicago R. I. & P. Ry. Co., 13 So.2d 389 (La.App. 2nd. Cir. 1943). Acosta cites cases for the proposition that stumpage value is the correct measure of damages and relies on the fact that his other expert, Auguste O. Landry, a timber appraiser, found only seventeen trees in good enough condition to go to the mill, saying they would produce only 1,765 board feet of marketable lumber. At $25 per 1,000 board feet, he contends the felled trees obviously were of little commercial value. We find that the cases cited by Acosta deal only with stumpage value in timberland and are not applicable to the instant case, for the principal value of the destroyed trees was their aesthetic value rather than their value as commercial timber.
The courts of this state have consistently allowed recovery based upon the aesthetic value of trees and shrubs. In Morgan v. Dixie Electric Membership Corporation, 112 So.2d 315 (La.App. 1st Cir. 1959), the Court considered the number of trees found on the property, their location with reference to houses or buildings and their shade-producing qualities, as well as whether the parties lived on the property so as to derive the aesthetic benefits therefrom. In the recent case of Womack v. Travelers Insurance Company, 258 So.2d 562 (La.App. 1st Cir. 1972), writ refused, 261 La. 775, 260 So.2d 701 (1972), the Court found the aesthetic value for ornamental trees is generally the difference in value of the property before and after damage. In all such cases considerable discretion is left to the trial court. See Womack, supra, and City of New Orleans v. Shreveport Oil Company, 170 La. 432, 128 So. 35 (1930).
On December 13, 1973, the trial judge actually viewed the damaged property; and although this was five years after the damage occurred, the damage was assessable at the time of the viewing. After the trial judge considered plaintiff's demands for dirt with which to fill the holes left by felled trees, after he viewed the actual site, after he considered plaintiff's claim of loss of aesthetic value, and after listening to lengthy testimony which encompasses a written transcript of 394 pages, we cannot say the trial judge was manifestly erroneous in disregarding stumpage value and awarding compensation based on what he thought would do "substantial justice in this case." In so doing, the trial judge properly assessed the damage within the limits of his discretion.
Acosta has appealed from the adverse judgment on his third party demand against Collins, contending Collins' operator Danos exceeded the authority and directions given by him. Collins asserts that even though Danos did encroach on Curole's property, it was done with the approval of Acosta and at his direction. In the alternative, Acosta claims Collins should be liable in solido with him.
Concerning the third party demands, the trial court was confronted with conflicting testimony. Acosta testified that he was in New Orleans and Lafayette on the two days when the work was performed, August 29 and 30, 1968. On the other hand, Danos testified that Acosta was present all day Thursday, August 29, and early on the morning of Friday, the thirtieth. Danos testified that late Thursday evening Acosta talked to him at approximately the point where a barbed wire fence crossed Curole's property. Even though Danos was felling trees at that place, located 25 to 30 feet upon Curole's property, Danos testified that Acosta told him he was doing a good job.
*533 Where testimony is in serious conflict and a resolution of questions necessarily depends on credibility of witnesses, considerable weight must be given to the findings of the trial judge who saw and heard the witnesses testify. Ginlee v. Helg, 251 La. 261, 203 So.2d 714 (1967); Borras v. Falgoust, 285 So.2d 583 (La.App. 4th Cir. 1973); Zerangue v. Hardware Dealers Mutual Fire Insurance Company, 255 So.2d 227 (La.App. 1st Cir. 1971). Where there is a conflict in the evidence, a reviewing court should not reverse the trial court provided there is evidence in the record which, reasonably construed, supports the conclusions reached by the trial court. Thomas v. Grain Dealers Mutual Insurance Company, 270 So.2d 582 (La.App. 2nd Cir. 1972); Hight v. Stewart, 265 So.2d 640 (La.App. 2nd Cir. 1972); Ware v. J. Ray McDermott & Company, 180 So.2d 573 (La.App. 3rd Cir. 1965).
We find that there is corroborating evidence in the record to show that Acosta was at the site when the clearing was in progress on Thursday, August 29, 1968, as testified by Danos, despite Acosta's contention that he was in New Orleans. Acosta claims that the records of the telephone company would prove he called his home from New Orleans on that Thursday, but no such records were produced. On the other hand, Danos had a vivid recollection of his conversation with Acosta, and we cannot hold under the cited jurisprudence that the trial judge committed error in believing Acosta to be present at the site on Thursday, at which time he represented to Danos that it was all right to continue bulldozing in the same manner. We can find no error in the trial court's judgment in favor of Collins, dismissing Acosta's third party demand.
For the reasons stated, the judgment of the trial court is affirmed, the costs to be borne equally by plaintiff-appellant, Johnny Curole, and defendant-appellant, Freddie Acosta.
Affirmed.