396 So.2d 967 (1981)
Edward I. DANIEL, III and Eileen Percy Daniel
v.
DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT of the State of Louisiana et al.
No. 13873.
Court of Appeal of Louisiana, First Circuit.
March 2, 1981.
Writ Denied June 5, 1981.
*969 Stephen P. Dart, St. Francisville, counsel for plaintiffs and appellees.
Robert R. Roche, Baton Rouge, counsel for defendant and appellant.
R. H. Madden, III, Ruston, counsel for defendant and appellee.
Before ELLIS, COLE and WATKINS, JJ.
COLE, Judge.
Appellant Department of Transportation and Development (DOTD) appeals a judgment rendered against it for the wrongful removal of a live oak tree on appellees' property. Six issues are presented on appeal; each will be discussed below.
This case arose from the following facts. Appellees are the owners of a 28 acre tract of land near St. Francisville, Louisiana known as "The Oaks" Plantation. The property is situated on both sides of Highway 61 (originally known as Route 3) in West Feliciana Parish. The entrance to the property is locally referred to as an "oak alley," i. e., a lane lined with 15 large live oak trees on either side. The trees are estimated to be 80 to 100 years old. In the summer of 1979 DOTD was improving the shoulder of Highway 61. Mr. James Gaspard, District Right of Way Supervisor for DOTD, contacted Mr. Daniel concerning the removal of a live oak tree alleged to be in the right of way on the east side of the road. Mr. Daniel refused to grant permission to remove the tree and contacted his attorney, Mr. Stephen Dart. Mr. Dart obtained a copy of a right of way deed executed by appellees' ancestor in title, Mrs. Mary Butler. The deed was executed in her capacity as administratrix of the estate of her late husband, Thomas Butler, and was dated May 9, 1931.
Mr. Dart contacted Mr. Gaspard and informed him research had revealed Mrs. Butler was not the administratrix of the estate of Thomas Butler at the time she executed the right of way deed, and therefore, she had no authority to grant the right of way as to anything but her own one-half undivided interest. Further research by Mr.
*970 Dart revealed the deed contained a specific restriction which reads in part as follows:
"Fences to be constructed along Right of Way at the option of the grantor and no live oak tree or trees to be cut on the East side of said right of way except with the consent of the grantor."
The right of way agreement granted a servitude of 40 feet on either side of the center line of the road, or a total of 80 feet.
Mr. Dart wrote a letter to Mr. Gaspard, dated June 8, 1979, which confirmed their previous conversation and specifically mentioned the invalidity of the right of way agreement and the contractual prohibition against cutting live oak trees. The letter stated it was Dart's understanding DOTD would not cut the tree in question without the permission of Mr. Daniel or a court order. The letter concluded, "If there is any change in this policy, please advise in writing." When questioned at the hearing Mr. Gaspard admitted he had given his word to Dart that the tree would not be removed without Daniel's permission or a court order.
Meanwhile, Mr. Gaspard had sought an opinion from DOTD's legal department concerning the contractual provision in the servitude agreement.[1] The legal section informed him the restrictive language applied only to trees beyond the 40 foot servitude, therefore the tree in question, only five or six feet from the surface of the road, was not protected. Gaspard and the District Administrator, Carlisle Richard, agreed with the opinion and Mr. Richard determined it was necessary to remove the tree for safety reasons. Late Friday afternoon Mr. Gaspard was informed the tree would be cut and stated he planned to call Mr. Dart Monday. Late Friday evening Mr. Gaspard was notified the tree would be removed the next day, Saturday. He stated he intended to inform Daniel or Dart Saturday morning. When Mr. Daniel left his house at 8:00 Saturday morning (June 23, 1979), he saw the tree had been cut down. Mr. Gaspard testified he was unaware the tree would be removed so early and did not have time to contact Daniel or his attorney.
The Daniels filed suit against DOTD and Lamar Haddox, the contractor who actually removed the tree, seeking an injunction against the cutting or trimming of any other trees or shrubs. After a hearing on the matter in August 1979 a preliminary injunction was issued. A trial on the merits was held in February of 1980[2] and the court issued a permanent injunction against the defendants. A judgment was rendered in favor of plaintiffs and against DOTD and Lamar Haddox, in solido, in the amount of $16,083.52. The court found the value of the tree to be $11,083.52 and awarded $3,000.00 for the mental anguish of Mrs. Daniel and $2,000.00 for the mental anguish of Mr. Daniel.
In written reasons for judgment the trial court found the right of way deed to be invalid because Mrs. Butler acted as an administratrix when in fact there was no administration of the succession of Thomas Butler. The court stated further that even had the right of way agreement been effective the restrictive language prohibited the removal of the tree without the landowner's permission. DOTD appealed.[3]

ACQUISITIVE PRESCRIPTION OF THE RIGHT OF WAY
Appellant argues the trial court erred in failing to find that the right of way had been acquired by acquisitive prescription of ten or thirty years under La.Civil Code art. 3472-3527. We disagree.
*971 The law of predial servitudes (Book II, Title IV of the La.Civ.Code) was revised by Acts 1977, No. 514 and became effective in 1978. Certain changes concerning the prescription of servitudes were made; however, the new law is not to be applied retroactively. Willis v. Southwest La. Elec. Membership Corp., 357 So.2d 1313 (La.App. 3d Cir. 1978). Since the revision has been in effect only three years it is apparent no prescription could have taken place under the new law. Therefore it is necessary that we examine the law in effect at the time of the alleged acquisition to see if the right of way was acquired by prescription.
In determining whether or not acquisitive prescription has taken place we must first determine what type of servitude the right of way agreement established. Under article 727[4] (repealed in 1977) a right of way, or right of passage, was classified as a discontinuous servitude. The article reads as follows:
"Servitudes are either continuous or discontinuous.
Continuous servitudes are those whose use is or may be continual without the act of man.
Such are aqueducts, drain, view and the like.
Discontinuous servitudes are such as need the act of man to be exercised.
Such are the rights of passage, of drawing water, pasture and the like." (Emphasis added.)
Servitudes are also classified as being apparent or nonapparent under La.Civ.Code art. 728 (now art. 707). As the name suggests, apparent servitudes are those that are perceivable by exterior signs and nonapparent ones are those which have no exterior evidence of their existence. Under art. 765 continuous apparent servitudes may be established by a possession of ten years. To the contrary, art. 766 declares that continuous nonapparent servitudes and discontinuous servitudes, whether apparent or not, can be established by title only.[5]
Under art. 727 a "right of passage" such as was granted in this case, is a discontinuous servitude and therefore cannot be acquired by prescription. It is clear appellant's argument must fall. The case books are filled with cases holding such servitudes can be acquired by title only. Landry v. Gulf States Utilities Co., 166 La. 1069, 118 So. 142 (1928), rehearing denied 1928; Boothe v. Department of Public Works, 370 So.2d 1282 (La.App. 3d Cir. 1979); Patin v. Richard, 291 So.2d 879 (La.App. 3d Cir. 1974).

EFFECT OF THE RESTRICTIVE LANGUAGE
DOTD argues it acted within its authority when removing the tree because the restrictive language found in the right of way agreement was simply a personal covenant which had no effect on any subsequent landowners. We disagree. Even if the right of way agreement was found to be valid, the restrictive language is clearly a covenant that "runs with the land" so as to preclude DOTD from removing the tree without permission.
The crucial factor in determining whether a covenant is one that "runs with the land" (a predial servitude) or is a mere personal agreement (a personal servitude), is whether or not the obligation was imposed in favor of the estate or in favor of a person. La.Civil Code art. 646 (now arts. 646 and 534); Levy v. Graham, 347 So.2d 1180 (La.App. 1st Cir. 1977); LeBlanc v. Palmisano, 43 So.2d 263 (La.App. Orl. Cir. 1949). After carefully examining the right of way agreement we conclude the restriction concerning the cutting of live oak trees *972 was a covenant for the benefit of the estate, and as such runs with the land.
We reach this conclusion because of the particular importance of these trees to the entire landscape of the property. It would be naive to assume the grantor, Mrs. Butler, desired the oak trees be preserved simply because of a personal fondness for them. To the contrary, it is obvious that the preservation of the oak trees was a benefit to the estate itself, because the oak trees formed the impressive oak alley that was the distinguishing feature of the plantation. Certainly the parties intended that this restriction, designed to preserve the estate, be honored by the State regardless of who owned the land. A conventional servitude established by title is governed by the intentions of the parties. Dixie Elec. Membership Corp. v. Jones, 360 So.2d 216 (La.App. 1st Cir. 1978); Clause v. Broussard, 146 So.2d 828 (La.App. 3d Cir. 1962).
Indeed, the restrictive language forms somewhat of a predial servitude within the predial servitude (right of way) granted for the road. Just as the right of way, if valid, would be effective against and in favor of all subsequent owners of "The Oaks," so too is the restriction. Pretermitting the validity of the right of way deed, the State still acted wrongfully because it violated the clear language of the agreement.

POLICE POWER OF THE STATE
Appellant argues the removal of the tree was justified under the general police powers of the state, citing La.Const. art. VI, § 9. This argument is without merit. It is true private property may be destroyed to protect the public safety. City of Shreveport v. Kansas City Southern Ry. Co., 193 La. 277, 190 So. 404 (1939), rehearing denied 1939, cert. denied, 308 U.S. 621, 60 S.Ct. 298, 84 L.Ed. 519 (1939). However, there is absolutely nothing in the record to suggest the oak tree in question posed any immediate peril to the public. The tree had stood for decades and there was no justification for removing it without taking the appropriate legal steps. DOTD cannot hide behind the general police powers of the state to justify the sudden destruction of private property in absence of some showing of a public emergency requiring immediate action.

MEASURE OF DAMAGES FOR THE TREE
The issue presented is whether or not the trial court erred in accepting the proper measure of damages to be the value of the tree alone rather than the depreciated value of the land on which the tree is located (i. e., the diminution value). Because we find the trial court committed no manifest error in awarding $11,083.52 for the loss of the tree, we affirm the judgment as to quantum.
Appellees' expert at trial was Mr. L. D. Kelleher, a practicing landscape architect for 24 years. Appellant's expert was Mr. Lewis Peters, a consultant and appraiser with degrees in forestry. Both experts relied on the method of evaluation provided in Guide For Establishing Values of Trees and Other Plants, a pamphlet prepared by the Council of Tree and Landscape Appraisers. Using this method, one considers the size, species, condition and location of the tree. Mr. Kelleher estimated the tree to be worth $11,083.52. Mr. Peters concluded the award for the loss of the tree should be $3,000. The basic difference in the two opinions is that Mr. Kelleher based his computation on the value of tree alone and did not consider the value of the surrounding land. To the contrary, Mr. Peters based his estimation primarily on the value of the surrounding property before and after the removal of the tree.
We are aware that generally, the method of estimating the value of a shade or ornamental tree wrongfully removed is to compare the value of the surrounding property before and after the removal. Womack v. Travelers Ins. Co., 258 So.2d 562 (La.App. 1st Cir. 1972), writ refused 1972; Davis v. Chicago R. I. & P. Ry. Co., 13 So.2d 389 (La.App. 2d Cir. 1943). However, we decline to apply the general rule in this *973 case, because of the circumstances surrounding the removal.
In Womack, plaintiff's trees were damaged when the defendant, who was working on plaintiff's property with plaintiff's consent negligently ruptured a gas line. In Davis, plaintiff's trees were damaged when the defendant, burning railroad ties nearby, negligently allowed the fire to spread. In both cases the damage was done by mere carelessness, i. e., simple negligence. To the contrary, the facts of the present case indicate appellant's behavior should be characterized as something more than simple negligence; it was a willful and wanton disregard for the rights of the property owner. As opposed to the above cited cases, the removal of the tree was not accidental, it was intentional. We therefore decline to apply the usual rule concerning the assessment of damages for the removal of this tree.
We find ample support in the Louisiana jurisprudence for the proposition that the trial court has discretion to apply a different measure of damages than above mentioned, in cases involving willful and wanton disregard for the interests of the property owner. In Turner v. Southern Excavation, Inc., 322 So.2d 326 (La.App. 2d Cir. 1975), the defendant-contractor asked permission of plaintiff to clear plaintiff's property and use it as a storage area for heavy equipment. (The defendant was involved in a construction project on a nearby highway.) The plaintiff refused his request but defendant proceeded to clear the land and continued to occupy it over plaintiff's protestations. At trial, plaintiff sought damages for the destruction of various ornamental and fruit trees. The court noted the trees had no real economic value but did have a substantial sentimental and esthetic value. The court refused to apply the usual measures of replacement value or diminution of market value and stated:
"There is no hard and fast rule for measuring damages in a case of willful and wanton trespass and destruction of private property. The court must adopt an approach in each case that will do substantial justice between the parties."
The "substantial justice" test was also applied in Curole v. Acosta, 303 So.2d 530 (La.App. 1st Cir. 1974). Defendant's bulldozer deliberately entered plaintiff's property (without permission) and damaged various trees and shrubs. The court cited Womack, supra, and declared the trial court had much discretion in determining the amount of damages in cases of this nature. This court affirmed the trial court's award which was based on the "aesthetic value" of the trees. Although no particular formula was mentioned, the trial judge had observed the damage done to the site and based his award on what he thought would do "substantial justice in this case."
A case with very similar facts to the present one is City of New Orleans v. Shreveport Oil Co., 170 La. 432, 128 So. 35 (1930). Defendant had requested plaintiff's permission to remove a certain water oak tree on plaintiff's property. Plaintiff declined to grant a permit but defendant removed the tree anyway. The Supreme Court recognized the trial court had great discretion in granting an award in this situation. The court noted it was impossible to replace the tree and that it was inappropriate to consider cases applicable to ordinary trespass.
Considering the foregoing cases, we cannot say the trial court erred in basing its award on the value of the tree as estimated by appellees' expert. As established above, the court is allowed great discretion in determining the proper award and need not use any particular standard, such as the diminution value of the surrounding land. Considering the age of the tree, its position at the beginning of the historic oak alley, its location on a plantation listed on the National Register of Historic Places, its size, its generally healthy condition and the lack of symmetry caused by its removal, we hold the trial court acted within its discretion in awarding approximately $11,000. We find this award does substantial justice to the parties involved.

THE AWARD FOR MENTAL ANGUISH
Appellant argues the trial court erred in awarding $3,000 to Mrs. Daniel for *974 mental anguish and $2,000 to Mr. Daniel. Considering the circumstances surrounding the removal of this tree, we feel the award is entirely justified and well within the discretionary range allowed by a trial court. These circumstancesthe violation of DOTD's assurance the tree would not be removed without the Daniels' consent, the expeditious and somewhat surreptitious removal of the tree at 6:30 A.M. without any notificationobviously caused a great deal of anguish and worry for the Daniels. Their discovery of the felled tree as they were leaving the country for a vacation made the situation even more anxious for them because they were not able to personally see to it that no other trees were cut. Certainly they are entitled to some award for the emotional discomfort caused by DOTD's deliberate removal of the historic oak.

ATTORNEY'S FEES
The judgment of the trial court provided for attorney's fees in the amount of 20% of the principal and interest. The attorney's fees may have been awarded under the assumption that the case was an expropriation proceeding.[6] The facts as reflected by the record clearly indicate the situation is one of tort, or perhaps trespass, but not expropriation. Indeed, if the award was made on the basis of expropriation there would be no question but that the proper measure of damages is the diminished value of the property. Reymond v. State, Department of Highways, 255 La. 425, 231 So.2d 375 (1970), rehearing denied 1970; State Through Dept. of Highways v. Ponder, 345 So.2d 106 (La.App. 1st Cir. 1977), writ refused 1977. Since the case is not an expropriation matter and because it is well settled there can be no attorney's fees except as provided by statute or contract, the award for the attorney's fees was erroneous. Simmons v. Hernandez, 287 So.2d 637 (La.App. 3d Cir. 1973), writ refused 1974. We reverse that portion of the judgment only.
In conclusion, for the foregoing reasons we affirm in part the judgment of the trial court. We reverse only that portion of the judgment which granted attorney's fees. Appellant is to pay all costs of these proceedings.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] He did not seek an opinion on Mary Butler's right to grant the servitude although he was aware of this issue.
[2] The parties stipulated that all testimony taken at the August hearing be adopted as part of the record of the trial on the merits.
[3] Lamar Haddox did not appeal the judgment rendered against him, therefore the judgment is definitive. La.Code Civ.P. art. 1842. Haddox had filed a third party demand against DOTD; judgment was rendered in favor of Haddox. DOTD has not appealed the third party judgment, therefore it too is definitive.
[4] All references to Civil Code articles are to the pre-1977 revision. Where applicable, the current code articles will be given.
[5] The 1977 revision abolished the category of continuous and discontinuous servitudes. Now the relevant inquiry would be whether the servitude was apparent or nonapparent. Under revised art. 739 nonapparent servitudes may be acquired by title only, while under revised art. 740 apparent servitudes may be acquired by acquisitive prescription.
[6] Attorney's fees are allowed in expropriation cases under La.R.S. 19:8A where the highest amount offered by the expropriating authority is less than the compensation awarded.