PRICE, Judge.
By this proceeding the Cypress-Black Bayou Recreation and Water Conservation District seeks to expropriate 10.5 acres of land in fee and a flowage servitude on an additional 26 acres from a 40 acre tract of land in Bossier Parish owned by defendants, Laurie G. Campbell and Foster L. Campbell, in connection with the construction of Cypress-Black Bayou Site No. 1.
On trial of the cause in the district court, defendants placed at issue the fair market value of the land sought to be acquired in fee, the necessity for the flowage servitude and the value of the proposed flowage servitude, and requested severance damages to the remaining 3.5 acres not subject to this proceeding.
The trial court rendered judgment granting the expropriation as prayed for and awarded defendants the total sum of $2,725 as just compensation for the property expropriated. In reasons for judgment, the trial judge prorated this award as follows:
Value of 10.5 acres expropriated in fee at $125 per acre $1,313.00 Value of servitude for flow-age on 26 acres at $25 per acre 650.00 Value of timber on 10.5 acre tract 748.90
The court found no severance damage had accrued to the remaining 3.5 acres and rejected defendants’ claim for this item of damage.
On this appeal defendants do not seriously urge the insufficiency of the proof for the necessity of the expropriation of the flowage servitude. Specifications of errors are directed to the insufficiency of the amount awarded by the trial court for just compensation for the property taken, the court’s refusal to award severance damages, and the amount awarded for defendants’ expert witnesses fee.
The 40 acre tract involved is situated approximately 3 miles northeast of the Town of Benton and is about one-quarter mile west of the Butler-Hill Road. To gain access to the property vehicles must travel down a pipeline right-of-way intersecting *365 the Butler-Hill Road and thence continue on a dirt trail through a wooded area on adjacent property.
The tract is described as being a combination of low bottom land and rolling hill land, presently being used for timber growing. There is evidence of the tract having been at some time in the past partially cleared and used for cultivation.
O. W. Deen and Walter J. Hunter, real estate appraisers called as witnesses for plaintiff, testified the highest and best use of the property was for the growing of timber. Deen estimated the fair market value of the property in two segments: that portion of the tract lying below 179.6 foot contour line at $95 per acre; that above this contour line at $120 per acre.
Hunter estimated the market value of all acreage in the tract at $125 per acre. Both used the market data approach and relied on sales of tracts ranging in size from 33 to 200 acres, selling for prices varying from $65 per acre through $150 per acre.
O. L. Jordan, a real estate appraiser, who testified for defendants, was of the opinion the tract would bring its highest value if sold as a unit for a suburban homesite connected with a small farm or cattle grazing pursuit on a portion thereof, with the remainder being left in timber growing. The other expert appraiser testifying on behalf of defendants, A. C. Montgomery, was of the opinion the best. and highest use of subject property was for either forestry or cultivation for crops. Montgomery also used the market data approach to arrive at an estimate of fair market value and referred to sales of property varying from 6 to 103 acres. The unit price per acre ranged from a low of $300 to a high of $1,097 per acre.
The trial judge found the evidence insufficient to establish the defendants’ contention that the tract had its best and highest use as a rural homesite and had a market value of $300 per acre for this purpose. We find no error in this conclusion. All sales, relied on by defendant’s appraiser to establish a demand for such property in this area were tracts of smaller acreage and all had access to a public road. Nor does the evidence reflect any improvements have been made by defendants since acquisition of the property in 1968 to render it more suitable for such a purpose. Defendants have simply continued to use the property for timber land as it had been used for the past decade.
Although plaintiff’s experts relied on sales that were comparable in size and use to subject property in estimating the value, they were for the most part tracts located considerably farther from the Town of Benton. We do not find any adjustment was made to allow for this factor which we consider to be significant. Hunter and Deen were reluctant to consider the several sales on record of tracts comparable in size and use within the same radius of the municipality as they feared “lake influence” may have unduly increased the value in these sales. Without some evidence of an investigation into the background of these ‘sales to substantiate their suspicions, we do not consider it proper to completely disregard these comparable sales within the same radius of Benton and are of the opinion the fair market value arrived at by the trial judge should be increased by the sum of $25 per acre to allow for this factor.
In fixing the value of the servitude of flowage affecting 26 acres of defendants’ property, the court accepted the highest of the estimates of plaintiff’s two appraisers, Mr. Hunter, who was of the opinion this encumbrance damaged the property to the extent of twenty percent of its fee value.
On this appeal defendants contend the trial court erred in its interpretation of the extent to which the servitude damages the market value of the property subject to it.
The trial judge found the evidence to establish the servitude area would only be subjected to flooding for a short period of *366 time during a storm and the predicted frequency to be infinitestimal; therefore, the use of this area for the growing of timber would not be affected.
Plaintiff offered the testimony of several persons connected with the planning and development of the Cypress-Black Bayou project, in an attempt to explain the purpose and extent of the servitude. The gist of their testimony is to the effect the easement is necessary to free the expropriating authority from liability to abutting property owners in the event an excessive rainfall causes temporary flooding of property above the 181.6 foot contour line, due to the inability of the spillway to adequately discharge the excessive water.
Defendants argue the servitude as acquired allows plaintiff the unrestricted right to flood the servitude area for indeterminate periods of time which could render the property useless even for the growing of timber. We do not interpret the language used in the judgment granting the servitude to allow other than a temporary impoundment during excessive rainfall for only the time necessary for the spillway to allow discharge of the overflowing water. Nor do we find the testimony to indicate there is much likelihood of this happening but few times over a period of years.
We do recognize, however, that any restriction on the full fee ownership of property, thereby limiting its usability, has some detrimental effect on its present market value.
All appraisers who testified admitted they had no knowledge of sales of properties with similar servitudes to rely on in formulating their estimate of percentage of damage to market values resulting from the easement. Estimates of damages ranged from $20 to $150 per acre based on percentages of fifteen to fifty percent fee value.
As no appraiser had any market data information to corroborate his opinion as to the loss of value because of the easement, we do not find it appropriate to accept the opinion of plaintiff’s appraisers as completely controlling without giving some weight to the opinions of defendants’ experts on this issue. Considering the estimate of all appraisers, we are of the opinion the servitude of flowage has caused a loss of value of thirty percent, or $45 per acre for a total damage of $1,170.
We find no error in the rejection by the trial court of defendants’ claim for severance damages to the remaining 3.5 acres not affected by the servitude. As we find the best and highest use of the entire property was for the growing of timber, this tract can continue to be utilized in connection with the 26 acres affected by the servitude for this purpose.
 The fixing of fees of expert witnesses is discretionary in the trial judge, and unless an abuse of this discretion has been shown, the appellate court should not disturb the amount actually charged by the expert to the litigant for his services. The amount of charges made should be taken into consideration by the court in fixing a fair and reasonable amount commensurate with the time expended by the witness in preparation for trial and his appearance in court. The amount awarded in the instant case is indicative that the trial judge did consider the actual charges made.
For clarity we recapitulate our findings of the amount due defendants as just compensation as follows:
Value of 10.5 acres taken in fee $1,575.00
Value of flowage servitude on 26 acres 1,170.00
Value of timber on 10.5 acre tract 748.90
Total $3,493.90
For the foregoing reasons, the judgment appealed from is amended to increase the total amount awarded as just compensation to the sum of $3,493.90, and as amended is affirmed. Costs of this appeal are to be paid by appellee.