292 So.2d 908 (1974)
Thomas J. MELANCON, Plaintiff-Appellant,
v.
OILFIELD LUBRICANT SERVICES, INC., and Louisiana Mud Company, Inc., Defendants-Appellees.
No. 9746.
Court of Appeal of Louisiana, First Circuit.
March 18, 1974.
Rehearing Denied April 22, 1974.
Alcide J. Weysham, New Orleans, for plaintiff-appellant.
Timothy C. Ellender, Houma, for Oilfield Lub. Services, Inc.
Lawrence Ernst, New Orleans, for La. Mud Co., Inc.
Before LANDRY, ELLIS and PICKETT, JJ.
PICKETT, Judge.
Plaintiff-Appellant, Thomas J. Melancon, is the lessee of some property along Bayou Grand Caillou near Dulac, Louisiana. The adjacent property is owned by Louisiana Mud Co., Inc., and leased by *909 Oilfeld Lubricant Services, Inc., ("Oilfield").
On October 16, 1971, a diesel fuel tank owned by Oilfield ruptured and a considerable amount of fuel sprayed or flowed onto Mr. Melancon's premises. After a trial on the merits, the court awarded damages in the principal amount of $480.00 in favor of Mr. Melancon and against both defendants. The judgment was amended to assess damages against Oilfield only. The plaintiff has appealed solely on the issue of the amount of the award.
Counsel for Oilfield urge in brief that since Mr. Melancon was the lessee and not the owner of the property he is limited to recovery for damages to the value of the lease rather than of the land itself. The record shows that Oilfield did not appeal nor answer the appeal so that these contentions are not properly before the court.
Mr. Melancon operated a seafood receiving business on the property. He would unload boats at his building facility, weigh and pack the catch and load same on trucks for transport. He testified that at the time of the spill he was planning to expand his facilities, but he was concerned that the contamination might lead to disapproval by the local board of health. This, he contends, is a compensable loss. We agree with the trial judge that the claim is too speculative to warrant an award.
The real issue as to quantum is the cost of restoring the soil to an uncontaminated condition. Two expert witnesses provided the only pertinent testimony on this point.
Mr. S. B. Milford, Jr., a civil engineer, testified on behalf of the plaintiff. He viewed the property one time, on June 7, 1972, and noticed the general discoloration caused by the diesel fuel over an area approximately one hundred feet by twenty-five feet in size. He concluded that excavation to the depth of eight feet and replacement of soil was necessary to remedy the situation. Such excavation would require pilings and a sheet pile wall to prevent displacement of adjacent soil and structures. He computed the total cost at $43,046.55, including engineering fees.
However, Mr. Milford stated that the type of remedial action should be determined in part by the intended use of the land and he did not specifically know what Mr. Melancon intended to do. He ran no tests and took no samples of the soil, although he stated that if Mr. Melancon intended to use the ground as a filter bed for sanitation such tests should be run. He said he would defer to a soil engineer to make a report and then base his analysis on the report.
Mr. Milford's estimate of an eight foot deep excavation was simply based on a depth that Mr. Melancon had quoted to him. Mr. Milford had no personal knowledge of the depth of penetration. When asked what it would cost to till the soil and expose it to air so the fuel would volatilize or evaporate, he estimated an hourly tractor rental of $12.00 and thought that two or three separate occasions would be necessary.
Dr. Robert Falgout, a Ph.D. in horticulture and agronomy and an associate professor at Nicholls State University, testified on behalf of the defendant. He visited the property on three occasions in 1972, on September 14, November 2, and December 28. He took random soil samples to a depth of five and one-half feet, but found no evidence of diesel below a depth of two feet, and found an average penetration of eighteen inches.
Dr. Falgout stated that diesel is a herbicide so that its principal adverse effect on soil was to destroy vegetation. Its effectiveness, however, as a herbicide is reduced because of its volatility; it is not permanent and has no residual effects.
Dr. Falgout ran some laboratory tests on the soil samples and determined that the soil could be decontaminated simply by exposure to air and sunlight, which would permit volatilization of the diesel. He was *910 of the opinion that plowing the ground to a depth of eighteen inches or two feet on several occasions would remedy the situation completely.
The trial court's award of $480.00 was based on a tractor rental of $12.00 per hour, ten hours per day, for four separate days. We find that this determination is correct. The only alternative as presented by the record was Mr. Milford's estimate based on assumed facts which were proved not to exist, namely, that an excavation to a depth of eight feet was necessary.
Plaintiff-appellant also urges error in the trial court's award of a higher expert witness fee to Dr. Falgout than to Mr. Milford. The awards were apparently based on the relative usefulness of their respective testimony. This is not error.
For the above and foregoing reasons, the judgment of the trial court is affirmed, at plaintiff-appellant's costs.
Affirmed.