409 So.2d 393 (1982)
August T. WETZKA, et al.
v.
BIG THREE INDUSTRIES, INC.
No. 12251.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1982.
*394 Reynolds, Nelson & Theriot, Charles W. Nelson, Jr., New Orleans, for plaintiffs-appellees.
Christovich & Kearney, C. Edgar Cloutier, New Orleans, for Big Three Industries, Inc., defendant-appellant.
Taylor, Porter, Brooks & Phillips, W. Arthur Abercrombie, Jr., Baton Rouge, for The Pace Companies and Jacobs Engineering Group, third party defendants-appellees.
Before SAMUEL, BOUTALL and CHEHARDY, JJ.
CHEHARDY, Judge.
Defendant, Big Three Industries, Inc. (Big Three), appeals a district court decision in favor of plaintiffs, August T. Wetzka and Septime O. Bossier, Jr., and against the defendant in the amount of $71,000 together with legal interest from date of judicial demand. Costs were also assessed against the defendant.
In an additional judgment all actions against The Pace Companies (Pace) and Jacobs Engineering Group (Jacobs) were dismissed; and pursuant to a motion to fix expert fees, an amended judgment was issued awarding Max J. Derbes, Inc., $1,150 and awarding G. A. Heft Engineers, Inc., $2,840.08.
At a trial on the merits of the case Wetzka testified that he and Bossier are the owners of a tract of land in St. Charles *395 Parish bounded on its four sides by Airline Highway, Edgewood Drive, property belonging to Shell Oil Company, and land belonging to the Norco Sewerage District. He testified that on the other side of Edgewood Drive his neighbor is Big Three, and he added his and Bossier's parcel of land contains approximately 5.86 acres.
Wetzka explained there is no access to his property from Airline Highway, and the only access to it is from Edgewood Drive. He said that during the years since 1951 he had never seen the road impassable as a result of flooding, nor had his own property ever flooded. Wetzka added the property is zoned for light manufacturing. In 1951, he stated, his wife (from whom he inherited the subject property) and the prior owner of the tract now belonging to Big Three each "gave twenty-five feet to a road." In 1959, he said, the sewer district then built Edgewood Drive as a shell road at its own expense.
Wetzka stated that although he knew Big Three was going to put a blacktop road at Edgewood Drive, he did not become aware that it would be elevated until September of 1977. He also said although the road was elevated previously only 8 to 10 inches above his property, after reconstruction the road was elevated to a height of approximately 5 feet above his acreage. He added that prior to reconstruction he could drive a vehicle off the road onto his property but subsequent to that work there was no way to drive a truck or car off the road. Wetzka further said the ditch between his property and Edgewood Drive is filling up with debris and no one from Big Three ever consulted him about the proposed elevation of the road prior to its construction.
Nelson Kuglar, secretary-treasurer for the sewerage district at Norco, said he had held that position since 1957 and added the sewerage district property is north of the plaintiffs' property. He testified he had never seen Edgewood Drive flooded to an extent that it was impassable and no one at the sewerage district had been consulted about the road prior to its reconstruction. He added the sewerage district property was raised only 1.3 feet above grade when the plant was built.
John Walden, project engineer for Big Three, stated it was necessary to reconstruct Edgewood Drive because it was inadequate for the company's trucks, and it was not high enough to insure access to and egress from the plant in bad weather. He said the road was previously 3 feet above sea level and it was elevated another 3 feet in reconstruction, as was recommended by Pace, Big Three's engineering contractor.
Walden stated that pursuant to learning Shell Oil Company had constructed its plant on neighboring property at 7.8 feet above mean Big Three also set its plant floor at 7.8 feet above sea level, and set the road, Edgewood Drive, approximately 1 foot below the plant level. He also said studies from the U.S. Corps of Engineers showed, according to the 100-year flood level, that the road should have been constructed even higher; however, these studies were not received prior to the beginning of construction. He also admitted he had never attempted to learn if the drainage characteristics at the Shell plant were similar to those at Big Three, and he said he "assumed" the property belonging to the plaintiffs was going to have to be filled if it was to be developed. He added the slope of the road was within the maximum allowed by the St. Charles Parish ordinance covering road design.
Henry W. Tatje, III, an appraiser for Max J. Derbes, Inc., testified that selling the plaintiffs' property as one parcel the estimated value would be $90,000, and if it were subdivided into lots its value would be $100,000. He said the only way of estimating the damage done by the road to the subject property was by a cost to cure method. In this case he believed the damage done was through loss of access to the property by vehicular traffic and psychological effects seriously affecting marketability. However, he did not think there were any serious drainage problems on the plaintiffs' land at that time.
David Garred, vice president of G. A. Heft Engineers, Inc., stated the surface of *396 Edgewater Drive is approximately 4 feet above the plaintiffs' property. He said the slope of the sides of the road is below the minimum standards he would recommend for erosion control, which will cause the ditch to become clogged. He also stated the slope of the road, according to the plans, encroaches on the subject property by approximately 4 feet.
Garred explained that to raise the Wetzka-Bossier property back up to within 1 foot of the road would require 30,000 cubic yards of fill at a cost of approximately $190,000. He said another alternative was to provide a continuous slope along the property in order to make it accessible to vehicles at any point along the road. He estimated this remedy would require 11,891 yards of fill with a resultant cost of $71,344. The third alternativeproviding a ramp or driveway from the road onto the landhe estimated would cost $4,284 per ramp after deduction for normal access.
Joe Durritt, accepted by the court as an expert in engineering, estimated the difference in cost between building such a ramp before the construction of Edgewood Drive and afterwards was approximately $960. He felt this was an appropriate ingress and egress to a light industrial site.
Risdon S. Wood, accepted by the court as a real estate broker, developer and appraiser, stated that considering selling the plaintiffs' land in two tracts and thereby having to provide two access ramps at a cost of approximately $1,000 each, this cost was offset by the substantial benefit provided to the property by the hard surface road. He stated he had, at some time, seen water covering the road prior to construction, although it was not impassable.
LSA-C.C. art. 667 states:
"Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."
LSA-C.C. art. 668 also establishes that one can do whatever he pleases on his own ground if it merely causes his neighbor some inconvenience (such as raising his house, resulting in darkening the lights of his neighbor's house) rather than damage.
In Chaney v. Travelers Insurance Company, 259 La. 1, 249 So.2d 181 (1971), the court stated it would not follow the majority decision of Reymond v. State Department of Highways, 255 La. 425, 231 So.2d 375 (1970), in those statements by that court regarding LSA-C.C. art. 667, which limited the applicability of that article to structural changes in or on the land and excluded activity on the property. Instead, the court in Chaney stated that, following an uninterrupted civilian tradition, Louisiana courts have understood LSA-C.C. art. 667 to cover constructions as well as activities on an estate that will cause unwarranted harm to another estate.
However, in Hero Lands Company v. Texaco, Inc., 310 So.2d 93,100 (La.1975), the court expressly stated in a per curiam opinion:
"* * * We have not held that allegations of damage based upon a depreciation of land value because of ordinary constructions and activities on a neighbor's property necessarily state a cause of action. The opinion has held that allegations that the maintenance of an ultrahazardous construction on defendant's servitude has caused them damage does under the factual allegation state a cause of action. * * *"
That rationale was similarly followed by this court in Charia v. Stanley, 359 So.2d 291 (La.App. 4th Cir. 1978), wherein we stated, discussing the holding in Hero, supra, at 293-294:
"The paragraph which describes the applicability of Article 667 makes it clear that Article 667 recovery is dependent on grounds distinct from negligence, namely, the performance of some act which is inherently dangerous to a neighbor despite the manner (negligent or nonnegligent) in which it is carried out. Thus, when the damage to neighboring property is shown to result from the negligent omission or commission of an act, absent *397 proof that that act, conducted properly, is inherently dangerous to the neighbor, application of Article 667 as an additional basis for recovery is not warranted.
"The jurisprudence supports this conclusion. In many cases applying Article 667, the damage-producing activity has been one which, conducted in a normal and careful manner, nevertheless resulted in damage, thereby earning such activity the appellation "ultrahazardous activity." See, e. g., Hero Lands v. Texaco, supra; Lombard v. Sewerage & Water Board, 284 So.2d 905 (La.1973); Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971); Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845 (1955); Burke v. Besthoff Realty Co., 196 So.2d 293 (La.App. 4th Cir. 1967); Daigle v. Continental Oil Company, 277 F.Supp. 875 (W.D.La.1967)."
Mandated as we are to follow this interpretation of LSA-C.C. art. 667, we cannot find that the road built at Edgewood Drive by the defendant can be considered an ultrahazardous activity or construction. Therefore, we must hold that no recovery is possible under LSA-C.C. art. 667.
The court also said in the Hero case, however, at 97:
"It does not follow, however, that Article 667 is the only basis upon which neighbors may seek redress for damages caused by proprietors in the vicinity. Article 2315 may also serve as a basis for recovery under appropriate circumstances. But when this authority is relied upon, fault must be proven. Article 2315 contemplates responsibility founded on fault, namely, negligence or intentional misconduct, including abuse of rights. The notion of fault in this context is conduct which violates the standard of reasonableness in the community, an act that a careful and prudent person would not undertake. * * *"
In his written opinion the district court judge found the defendant negligent in building the road by sacrificing the necessary slope, encroaching on the plaintiffs' property and not investigating properly to determine if the road could have been built at a lower elevation in order to avoid damage to the subject acreage. There is ample evidence and testimony in the record to support this conclusion on the part of the district court judge, as noted above. The defendant did not even attempt to ascertain what sort of effect building such an elevated roadway would have on the adjoining properties of neighbors in the immediate area, simply "assuming" that all such neighboring landowners intended to build up their properties to the height of that road. Such a disregard of the consequences to the neighbors, combined with deficient construction of the road in regard to its slope and boundaries, and with resultant injury, as in this case, can only be looked upon as negligence, thereby satisfying the requirements of fault articulated in LSA-C.C. art. 2315.
Nor can we agree with defendant's contention that the district court erred in assessing damages. In Ewell v. Petro Processors of Louisiana, Inc., 364 So.2d 604 (La. App. 1st Cir. 1978), the court said at 608-609:
"There is no hard and fast rule in Louisiana as to the measure of damages in cases such as this. In some cases involving immovable property our courts have used the cost of restoration as the measure. Wilson v. Scurlock Oil Co., 126 So.2d 429 (La.App. 2nd Cir. 1960); Melancon v. Oilfield Lubricant Services, Inc., 292 So.2d 908 (La.App. 1st Cir. 1974). In other cases, the difference between the value of the property before and after the damage has been the measure. Womack v. Travelers Ins. Co., 258 So.2d 562 (La.App. 1st Cir. 1972); Curole v. Acosta, 303 So.2d 530 (La.App. 1st Cir. 1974). In one case, a combination of the two methods was used. Daspit v. State, Department of Highways, 325 So.2d 368 (La.App. 3rd Cir. 1975).
* * * * * *
"We think that the proper measure of damages must be determined from the circumstances of each case, considering *398 such factors as the extent of the damage; the use to which the property may be put; extent of economic loss, both as to value and income; and the cost of and practicability of restoration."
In the present case, plaintiffs' expert testified it would be extremely difficult to estimate damages in any way other than the cost to cure method. Although defendant presented expert testimony regarding the offsetting of damages due to enhancement of the property by the subject road, and testimony was also presented regarding the feasibility of ramp installations, the continuous slope access was a fair measure of damages considering that prior to construction of the road the plaintiffs did have access to their property at all points bordering the roadway. We cannot, therefore, find that abuse of much discretion that would allow us to disturb the district court's award. Reck v. Stevens, 373 So.2d 498 (La.1979).
Defendant also argues that the trial court judge erred in granting expert witness fees in accordance with invoices submitted by those experts. The court noted in State Department of Highways v. Kornman, 336 So.2d 220 (La.App. 1st Cir. 1976), that the agreement between an expert and the party for whom he testifies is not the sole criterion to set the amount to be taxed as court costs for his services, but to alter an award an appellate court must find the trial judge abused the great discretion properly accorded him in such matters. In Cypress-Black Bayou Rec. & W. Con. Dist. v. Campbell, 259 So.2d 363 (La.App. 2d Cir. 1972), the court also said that absent an abuse of discretion the appellate court should not disturb the amount actually charged by the expert for his services, and the amount of charges should be taken into consideration by the court in fixing a fair and reasonable amount commensurate with the time expended by a witness in preparation for trial and his appearance in court. In State Department of Highways v. Manning, 322 So.2d 362 (La.App. 2d Cir. 1975), however, the court said that a party cannot claim the charges made by the expert for time spent in consultation with his legal counsel prior to trial.
In State Department of Highways v. Gordy, 322 So.2d 418 (La.App. 3d Cir. 1975), the court stated at 423-424:
"The parties to an expropriation suit may engage appraisers of their choice, and they may agree to pay those experts specified fees for their services. The experts may also testify as to the time they spent in preparatory work and in testifying. However, an agreement entered into by a party as to the fee which an expert appraiser is to receive, or the statement of the expert as to his charges or even the actual payment of such a fee to the expert, are not binding on the court and are not criteria to be used by the court in fixing the expert fees which are to be assessed as costs in the suit. LSA-R.S. 13:3666; State v. Donner Corporation, 236 So.2d 841 (La.App. 3 Cir. 1970); Recreation and Park Commission v. Perkins, 231 La. 869, 93 So.2d 198 (1957); State Department of Highways v. Black, 207 So.2d 583 (La.App. 3 Cir. 1968).
"An expert appraiser who testifies in an expropriation suit is entitled to reasonable compensation for his appearance in court and for preparatory work done by him, but the fees allowed him and taxed as costs must be reasonable and they must be somewhat in line with the fees heretofore allowed by the courts of this state in other similar cases. State, Department of Highways v. Black, supra. The fees allowed expert witnesses also should be "based on the relative usefulness of their respective testimony." Melancon v. Oilfield Lubricant Services, Inc., 292 So.2d 908 (La.App. 1 Cir. 1974).
"In determining whether the fee allowed an appraiser and taxed as costs in an expropriation suit is reasonable, we think consideration must be given to the question of whether the preparatory work done by the appraiser was reasonably necessary, whether it actually tended to show the value of the property taken or severance damages, and whether the conclusions he reached based on that *399 preparatory work were of some usefulness in determining the award which should be made. We also believe that consideration must be given to the value of the property being taken and the amount of severance damages sustained by the landowner. An appraisal fee greatly in excess of all of the awards made is not reasonable and should be reduced."
A review of the record reveals that the invoice of Max J. Derbes, Inc., states a charge, among others itemized therein, of $100 for conference with the plaintiffs' attorney. Accordingly, this court will reduce the award made to that expert by $100, however, we can find no other abuse of discretion by the district court judge which would allow us to further disturb the award to these two experts, especially in view of the fact that the court's quantum of damages awarded to the plaintiffs was based on their testimony. The court clearly, as provided by LSA-R.S. 13:3666, had the authority to tax these costs to the defendant either by a rule to show cause or from the testimony adduced at trial, as was done in the present case.
This court can find no error in the district court's dismissal of Big Three's third party demand against Pace and Jacobs. Regarding the standards to be applied in deciding the negligence of engineers or surveyors, the court said in Charles Carter & Company v. McGee, 213 So.2d 89, 92 (La.App. 1st Cir. 1968):
"The test of liability of one employed to render professional services on the ground that he has been deficient or remiss in the performance of such services is well stated in Pittman Construction Co., Inc. v. City of New Orleans, La.App., 178 So.2d 312, from which we quote with approval the following:
`In determining the liability of Godat, the same standard of care applied in the case of architects, physicians, attorneys, and others engaged in professions requiring the exercise of technical skill should be applied. The test is whether he performed his service in accordance with the skill usually exercised by others of his profession in the same general area; and the burden of proving he did not, is upon the party making the charge, in this case the City, third-party Plaintiff. The City has not discharged this burden here because all expert testimony vindicates the professional skill and judgment exercised by Godat in this case.'
"The Court further commented that:
`"The undertaking of an architect implies that he possesses skill and ability, including taste sufficient to enable him to perform the required services at least ordinarily and reasonably well, and that he will exercise and apply in the given case his skill and ability, his judgment and taste, reasonably and without neglect. But the undertaking does not imply or warrant a satisfactory result. It will be enough that any failure shall not be by the fault of the architect." * * *
`Further, use of the term "architect" is intended to cover "engineers" as well * * * expert testimony is needed to establish lack of care and resulting negligence on the part of architects and engineers.'
"We see no reason why the above stated rule should not apply to surveyors."
In the present case no expert testimony was presented establishing lack of care or resulting negligence on the parts of these third party defendants. Because the burden of establishing such was on Big Three, third party plaintiff, its demand against these two parties was properly dismissed.
For the reasons assigned the district court judgment is amended and the award made to Max J. Derbes, Inc., for expert fees is hereby reduced to $1,050. In all other respects the trial court judgment is affirmed. Costs in this court are to be paid by defendant-appellant.
AMENDED AND AFFIRMED.