769 So.2d 703 (2000)
MONTGOMERY STIRE & PARTNERS, INC.
v.
LONDON LIVERY, LTD.
No. 99-CA-3145.
Court of Appeal of Louisiana, Fourth Circuit.
September 20, 2000.
*704 Robert G. Stassi, Chehardy, Sherman, Ellis, Breslin & Murray, Metairie, LA, Counsel for Plaintiff-Appellee Montgomery, Stire & Partners, Inc.
Vincent James Booth, Booth & Booth, Metairie, LA, and Martin Childs, Metairie, LA, Counsel for Defendant-Appellant London Livery Limited.
Court composed of Chief Judge ROBERT J. KLEES, Judge WILLIAM H. BYRNES, III, Judge MIRIAM G. WALTZER.
KLEES, Chief Judge.
This is an appeal from a judgment rendering London Livery Ltd. (London) liable to Montgomery Stire & Partners, Inc., (Montgomery) for sums due on open account.

FACTS
On April 15, 1995, Montgomery, an advertising and public relations firm, entered into a written contract to provide advertising and public relations services to London for a period of one year, ending on April 14, 1996. Of significance to this suit is that the contract called for a budget of $36,000.00 for public relations, $8,000 for a production plan, $10,000 for an incentive plan, and $40,000 for media in the New Orleans area. In November 1995, London cancelled the public relations portion of the contract. Although Montgomery performed seven a half months of public relations services, both parties agree that Montgomery only invoiced $9,000.00 for public relations services for May, June and July of 1995, and that London paid the full $9,000.00. However, Montgomery alleges that it invoiced London $21,216.00 for advertising services in February, April, May, and July of 1996, and that London has only paid $11,000.00 of that amount. Accordingly, on November 14, 1997, Montgomery filed suit against London for collection of an open account balance of $10,216.13 due, and for attorneys' fees authorized by La. Rev.Stat. 9:2781. London filed an answer in which it denied owing the debt and reconvened against Montgomery asserting that it had not received adequate services in return for the $3,000.00 per month public relations retainer. At trial, Montgomery stipulated to a credit of $1,831.75 for a payment made by London directly to one of the vendors. The trial court rendered judgment in favor of Montgomery for $8,384.38, with legal interest from date of judicial demand until paid, attorney's fee of 15%, and all costs. In its reasons for judgment, the trial court stated:
This "peculiar" case was tried for one complete morning to determine the validity of a contract for $3,000.00 per month as public relations. It wasn't until the afternoon session that the Court discovered the morning session was useless, as plaintiff exhibit 14 used by defendant *705 had little to do with what plaintiff then averred was his claim.
This item of defense was abandoned by defendant when plaintiff stated he was making no claim for public relations delinquencies, but that his entire claim was only for the final four invoices sent by plaintiff, to wit: exhibits 1,2,3 and 4. Those invoices were sent to defendant long after plaintiff had agreed to cancel their contract and forgive defendant for approximately six months of public relations claims at $3,000.00 per month for all of which he could have sued defendant.
Little defense evidence was introduced to counter the bills sent. The plaintiff introduced exhibit P-6 which reflects defendant's agreement to be bound by the balance sued for and is signed by the employee of defendant who was admittedly in charge of bookkeeping and finances. It reflects an agreement to pay all balances due. Some checks were sent in accordance with this agreement, after which defendant stopped paying.
Exhibit number 15 best describes the situation. A bill was sent to defendant on November 5, 1995 for $3,747.08 and paid by them on May 9, 1996 in full. Subsequent to this plaintiff sent the four bills in controversy as follows:

Invoice # Dates Amount
 1539 Feb. 22, 1996 $12,557.00
 1575 Mar. 6, 1996 155.20
 1598 Apr. 6, 1996 3,902.51
 1624 June 18, 1996 4,601.42
 __________
 $21,616.13

Six months after the last bill was sent the defendant in exhibit 6 agreed to a payment schedule of $5,000.00 on December 23, 1996, $5,000.00 on January 31, 1997 and the balance as stated. In response to this agreement, plaintiff alleges credits of $11,000.00 and further volunteers a credit of $1,831.75 for money paid to another party and no longer due to plaintiff, leaving a balance of $8,384.38 owed by defendant to plaintiff, for which judgment is rendered against defendant along with 15% attorney fees under the provisions of R.S. 9:2781.
The reconventional demand of defendant against plaintiff is dismissed.
London appeals, urging five arguments: (1) that the trial court erred in concluding that the evidence was sufficient to prove that plaintiff was entitled to recover any sums in addition to the $35,686.73 which was already paid for advertising and public relations services; (2) that the trial court erred in finding that plaintiff was entitled to recover attorney's fees under the Open Account Statute when plaintiffs' demand and its petition were admittedly incorrect; (3) that the trial court erred in interpreting the agreement between the parties as providing for a $3,000.00 monthly retainer for public relations services; (4) that the trial court erred in excluding documentary evidence and testimony necessary to establish its' reconventional demand; and (5) that the trial court erred in rejecting its' reconventional demand and in concluding that its defenses had been abandoned.
Montgomery appeals contending (1) that the trial court erred in awarding only 15% attorneys' fees, and (2) that the trial court erred in failing to award an additional $13,500.00 for the balance due under the public relations contract.
London first contends that it made direct payments to third party vendors and that Montgomery's evidence was insufficient to prove that it owed the $8,384.38. We disagree.
Actions on an open account are controlled by La.Rev.Stat. 9:2781 which defines an open account as follows:
"[O]pen account" includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting *706 the parties expected future transactions....
This Court has held that a creditor suing on an open account has the burden of proving that the debtor contracted for the sales on an open account. For there to be an action on an open account, there must necessarily be a contract which gave rise to the debt. Metrospec Computers & Supply, Inc. v. R.A. Roldan & Co., Inc., 94-0102 (La.App. 4 Cir. 9/29/94), 643 So.2d 833, 835. Further, the amount owing on an open account is a question of fact as to which the trial judge's findings may not be disturbed absent a finding of manifest error. Id.
In this case, Montgomery admitted into evidence a copy of the contract for the advertising and public relations services. The contract, signed by both London and Montgomery, outlined a budget beginning on April 15, 1995 and concluding on April 14, 1996. At trial, Mr. Stire, the founder of the advertising firm, testified that the four invoices sued upon were "for work that we had done on an incentive program brochure and the different components of that brochure, the application card, et cetera, two ad layouts, or design of two advertising ads that were placed in various publications, and some expenses which we incurred..." He testified that the total of the four invoices was $21,216.13, but that London made three payments in increments of $5,000, $5,000 and $1,000. Thus, Mr. Stire testified that London's balance was $10,216.13 minus $1,831.75 for the payment made by London to one of the vendors directly. Mr. Stire admitted into evidence a letter written on July 24, 1996, by Montgomery to London, stating that Montgomery had "paid the particular vendors involved" and requested that London pay the $21,216.13 statement. Mr. Stire also admitted into evidence a letter written on December 17, 1996, on behalf of London to Montgomery, stating, in pertinent part:
Per our telephone conversation this morning, London Livery would like to propose the following for the complete settlement of our obligation:
1) 5,000.00 payment by Monday, 12/23/96;
2) 5,000.00 payment by Friday, 1/31/97;
3) The balance is proposed to be paid by Friday, February 28, 1997 but not later than Monday March 31, 1997....
In defense, London argued that payments made to Montgomery, after November 1995 [the month the public relations contract ended], were applied to the public relations bill rather than the advertising bills. However, as addressed more fully in assignment three, both parties testified that Montgomery only billed, and London paid, $9,000.00 for public relations services. The record shows that the trial judge believed Mr. Stire's testimony that London owed a balance of $8,384.38 for Montgomery's advertising services. The trial court is the finder of fact and has discretion to accept or reject the testimony of any witness. Moreover, London's own employee agreed to pay the balance in his letter to Montgomery on December 17, 1996. Accordingly, we find that the trial judge did not err in finding that the amount due on the open account was $8,384.38.
London's second argument is that the trial court erred in finding that Montgomery was entitled to recover attorney's fees under the Open Account Statute when Montgomery's demand and its petition were admittedly incorrect. We agree.
In order to recover attorney's fees under the Open Account Statute, the claimant must furnish a "written demand... correctly setting forth the amount owed ..." LSA-R.S. 9:2781(A). Courts strictly comply with La. R.S. 9:2781 "because the award of attorney fees is exceptional and penal in nature." Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc., 449 So.2d 1014, 1015 (La.1984). Thus, this court has found that "under the precise wording of this statute, unless the *707 amount demanded is correct, attorney's fees are not due." Dutel v. Succession of Touzet, 94-0978 (La.App. 4 Cir. 1/19/95), 649 So.2d 1084, 1086. See also Guedon and Associates, Inc. v. Haik, 533 So.2d 1256; Fleishmann v. Sovereign Financial Consultants, Inc., 93-1980 (La.App. 4 Cir. 3/29/94), 635 So.2d 414.
In this case, Montgomery's demand letter to London stated the amount of the claim to be $10,216.13. However, Montgomery stipulated at trial that London had paid a third party vendor directly and that London was to receive a credit of $1,831.75. The record fails to show that the claim was ever made to London for "the correct amount owed" as awarded by the trial court, $8,384.38. Accordingly, the trial judge erred in awarding Montgomery attorney's fees when the amount demanded was not the correct amount owed.
London's third assignment of error is that the trial court erred in finding that defendant had agreed to pay Montgomery a $3,000.00 monthly retainer for public relations services. We find no merit to this argument.
At trial, Montgomery admitted into evidence two invoices, sent to London, evidencing $9,000.00 [three months] worth of public relations services. Mr. Fisher, the president and CEO of London, testified that London paid $9,000.00 for public relations servicesthe amount billed by Montgomery. Further, Mr. Stire testified that Montgomery did not sue on the public relations services. Specifically, Mr. Stire stated "it's cut and dry. Only billed them nine and paid it. It's our loss. We could have billed for the additional months. We didn't do it. And we didn't do it, might have made a mistake, but that has nothing to do with the advertising." Under these circumstances, we find that the issue of whether or not the contract provides for a $3,000.00 monthly retainer for public relations services is irrelevant, especially in light of the fact that Montgomery is only suing on the four advertising invoices.
London's fourth assignment of error alleges that the trial court erred in excluding documentary evidence and testimony necessary to establish London's reconventional demand and defenses to the principal demand.[1] Specifically, London argues that the trial court erred in refusing to admit London's evidence concerning the public relations contract's formation, evidence on the pre-formation negotiations between Montgomery and London, evidence concerning the public relations services provided by Montgomery, and evidence relating to Montgomery's account billing worksheet. We find no merit to this argument.
The general rule as to relevance is that the evidence must have some probative value, and be reasonably connected to the transaction in question. Code of Evidence Art. 402, 403. In addition, the question of whether evidence is relevant or not is within the discretion of the trial court and its ruling will not be disturbed absent a clear abuse of discretion. Ibieta v. Star Casino, Inc., 98-0314 (La.App. 4 Cir. 10/7/98), 720 So.2d 143, 146 writ denied by, 98-2806 (La.1/8/99), 735 So.2d 635. We, like the trial judge, fail to see how this evidence had any bearing on the suit for the four advertising bills. First, although London argues that the contract did not call for a $3,000 per month relations "budget", it nonetheless acknowledges this agreement in it's answer and reconventional demand by stating in paragraph VIII that "... [t]he total amount to be paid by the defendant to the plaintiff for the term of one year was $36,000.00, which was billed by plaintiff at the rate of $3,000.00 per month." Second, the four invoices sued upon were for advertising services performed for London after the public relations contract had ended. Third, as stated *708 above, London had the benefit of seven and a half months of public relations services for the price of three months. We therefore rule that the trial judge did not abuse his great discretion in excluding evidence relating to the public relations services.
London's last assignment of error is that the trial court erred in rejecting its reconventional demand. London argues that Montgomery failed to provide public relations services of sufficient value to justify its claims for payment. However, as previously stated, the record evidences that Montgomery only invoiced London for three months of services and that London received an additional four and a half months worth of public relations services free of charge. Accordingly, we find no error in the trial courts judgment dismissing London's reconventional demand. Montgomery's first assignment of error alleges that the trial court erred in awarding it only 15% attorney's fees. Because we have already addressed this issue, and have found that the trial court erred in awarding any attorney's fees, we find no merit to Montgomery's argument.
We now address Montgomery's last assignment of error alleging that the trial court erred in not awarding it an additional $13,500.00 representing the balance due under the public relations contract. We find no merit to this argument. First, not only did Montgomery's petition fail to mention the public relations contract, but also Montgomery repeatedly stated at trial that it was not interested in the public relations contract. Second, the record indicates that Montgomery had only invoiced London for three months, out of the seven and a half months, for the public relations services. Under these circumstances, we find that the trial court did not err in failing to award the $13,500.00 to Montgomery.
For the foregoing reasons, we affirm the trial court's judgment with regard to the open account balance of $8,384.38 due to Montgomery, but we reverse the judgment of the trial court insofar as it awards attorney's fees pursuant to LSA-R.S. 9:2781.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] London's reconventional demand alleged that Montgomery failed to provide the public relations services agreed upon and which London reasonably expected would be forthcoming.