JjEDWIN A. LOMBARD, Judge.
The plaintiff, Norman Penton, D/B/A Penton Studio, seeks review of the trial court’s judgment in his favor in the amount of $1,500.00 in his open account suit against the defendant, attorney George W. Healy, IV. After review of the record, the briefs of the parties, and the pertinent caselaw and statutory authority, we reverse the judgment and remand the matter to the trial court for further proceedings.

Pertinent Facts and Procedural History

This case arises out of the production of twenty-three large photographic exhibits by the plaintiff in less than fifteen hours for use as a demonstrative aid by the defendant’s expert witness in an ongoing trial (the “Seither case”)[1] in the Civil District Court for the Parish of Orleans. The plaintiff billed the defendant $6,796.37 for its services. On November 2, 2001, the defendant contested the amount, offering to pay only $1000.00. On November 7, 2001, the plaintiff refused the offer with the following detailed explanation of the charges:
Your offer of $1,000.00 for the courtroom exhibit photographs ordered by Susan Langoni on October 16, 2001 is unacceptable. Here is why:
|21) $250 is the price of a 20x24 mounted photograph. $180 is the price of a 16x20 mounted photograph. These are the regular prices that we see to all of our clients. It is common practice to discount any additional copies made from the same image, however you have 23 originals.
2) Part of the $500 lab rush fee covers the costs to mix the necessary chemicals to run the film and make the prints. Our regular production schedule is to mix new chemistry every other week. Your job came in at a time in the middle of this cycle. New chemistry had to be mixed with just hours to complete the printing. During a normal production cycle, chemistry is always left overnight before use. This gives us more consistent negative density[,] which makes the printing of the photographs more predictable. We did not have that time making the printing stage of the job that much more difficult. Also the lab rush fee includes the overnight labor and the interruption of work in progress that had to be can-celled and started over with a delay in delivery as promised to clients.
3) We will waive the $500 shooting fee as the difficult and expensive work was in the production of the prints.
Mr. Healy, please note that there is a big difference between a 4x6 proof size print and a 20x24 and 16x20 display size print. We are all familiar with the concept of one hour photos available at nearly every grocery store (done at an added cost), but the idea of 23 display *686 size prints shot and ready for use in under 15 hours simply does not exist. If we did not have our own lab with the capability to process film and paper you would not have had these photographs at your trial. Even if we had shot the job digitally, large format ink jet photographs take at least an hour to print each one after a proper color balance has been achieved though test proofing.
During the conversation between Marlin Penton (my photographer) and Susan Langoni on October 16, the discussion was in the nature of whether or not we could do the job with such short notice. We did not discuss cost. The day after the shot I did discuss the job with several other area photographers to ensure that the invoice was not over nor under inflated. I found several who charge more than I do for display photos. Every conversation was ended with amazement that we were actually able to complete such an undertaking within the time frame.
There are very few photographers in the metro area who have their own lab and I can not think of even one that does his own C-41 film processing.
$6296.37 is your new total due. I am hoping that this particular job does not jeopardize a further working relationship between Penton Studio and O’Bryon & Schnabeo [sic].
|3On November 15, 2001, at the conclusion of the Seither trial, the defendant filed a rule to tax $173,427.02 in costs, including the plaintiffs bill, in the trial court. In his memorandum in support of the rule to tax costs, the defendant stated:
We received a bill from Penton Photography in the amount of $6,796.00 [sic]. This was the bill submitted to us in connection with the photographs taken of John Stilson’s demonstrative aid. The undersigned disputed this bill as he feels it is outrageous. The undersigned respectfully suggests that this court set a reasonable bill for photographing and “blowing up” the photographs of the “exemplar buck.” The undersigned did not approve this bill. The undersigned’s secretary called and asked that some pictures be taken and we received the bill as a consequence although we never approved the bill and never authorized this type of expense.
On November 16, 2001, the defendant filed a separate motion in the Seither case to determine photographic costs and a memorandum in support of the motion, requesting that the court set a reasonable amount for the photographs. On November 30, 2001, the plaintiff filed an opposition, pointing out that a determination of the dispute over the costs of the photographs within the context of the Seither case would be an unauthorized use of a summary proceeding. The plaintiff also filed a motion for sanctions against the defendant, claiming that he brought the motion in the Seither case to determine photographic costs solely to harass the plaintiff into accepting less than the invoiced amount.
On November 30, 2001, the trial court heard the motions and took the matter under advisement. On February 25, 2002, the trial court ruled as follows:
The [Seither] plaintiffs have filed a Motion to Set Costs in the above captioned case. Included in the [Seither] Plaintiffs costs and expenses was an invoice from Penton Studio in the amount of $6,296.37 for 24 photographs and enlargements produced for trial. This Court finds Penton Studios prices to be exorbitant by any standard. This Court does not think that photographs taken by Andy Warhol while being directed by Cecile B. Demil [sic] would approach such unreasonable costs.
*687 Considering the Motion to Set Costs filed on behalf of the [Seither] Plaintiffs: LIT IS HEREBY ORDERED that the cost for Penton Studios taking of 24 photographs is set at $1,500.00.
IT IS FURTHER ORDERED that all other motions pending on the issue of the photographs taken by Penton Studios are hereby dismissed.
On April 2, 2002, the plaintiff filed a devolutive appeal of the trial court’s denial of its motion for sanctions in the Seither case[2] and filed the instant petition on open account, attorney’s fees, and damages for abuse of process, in Orleans Parish First City Court. In its petition, the plaintiff alleged that the defendant owed $6,796.37, the invoiced amount, despite the Seither trial court’s order because the plaintiff was not a party in the Seither lawsuit. The plaintiff also sought damages for abuse of process, alleging that the subpoena was issued to him by the defendant in conjunction with the Seither rule to tax costs to harass him into accepting a lesser amount for his services and to convince him that the amount due could be determined in the summary proceeding to tax costs in the Seither matter.
On April 10, 2002, the defendant filed a declinatory exception of lis pendens and a peremptory exception of res judicata with his answer to plaintiffs suit on open account. The defendant averred that the plaintiff, by filing an opposition to the rule to fix costs, voluntarily appeared in the Seither case. The defendant argued that, to the extent that the value of the photographic exhibits was not decided through the motion to fix costs in the Seither case, the plaintiff was entitled only to a reasonable price at the time and place of delivery. In support of his argument, the defendant relied on his status as a mandatary for his client in the Seither case, which he claims was disclosed to the plaintiff at the time the [ .¡photographic services were requested, and asserts that he could not be held personally liable for the photographic services rendered on behalf of his client.
On May 15, 2002, the plaintiff filed its opposition to defendant’s exceptions, arguing that the underlying suit (the Seither case) and the instant action do not have the same parties in the same capacities and do not involve the same transaction or occurrence. On May 21, 2002, the court overruled the defendant’s exceptions of lis pendens and res judicata and set the matter for trial. At the trial on December 16, 2002, the following evidence was adduced.
The defendant testified that upon being instructed by the trial court in the Seither case to provide the jury with photographs of the exemplar the next morning, he instructed his secretary to hire a photographer and that his secretary located and hired the plaintiff without further guidance or approval from him. The defendant conceded he did not know how the photographs were taken or developed. The invoice and correspondence between the defendant and the plaintiff regarding the fee for the photographic exhibits were admitted into evidence.
The defendant admitted that the plaintiff was not a defendant in the Seither case and that he filed the motion to determine photographic costs, rather than taxing the photographs as costs, because the photographs were not admitted into evidence.[3] *688 The defendant conceded that he paid $260,000.00 in fees in the Seither Incase, although the trial court’s order only taxed $29,000.00 in costs against the defendants. The defendant explained that he paid in full the fees of the other individuals who provided services in preparation for trial because “those folks had been working for me for a period of approximately 18 months.”
The plaintiff testified that he has been a professional photographer for thirty years and his studio is located in Kenner. He stated that his son, Marlin Penton, answered the telephone call from defendant’s secretary and took the photographs. The plaintiff described the process and timing of completing the order, which he completed between 6:00 p.m., when Marlin Penton arrived with the film, and ended at approximately 9:30 a.m. the next morning. He testified that by the time the photographs were taken, no other lab in the city was open for processing prints of such size.
The plaintiff admitted that the defendant’s secretary did not specify any particular process for producing the photographs and that she merely asked for big, clear prints. He further admitted that a digital camera could have been used, with the images printed on a ink jet printer at Kinko’s, but that the turn-around time was too short to use such a process because each print would take one hour to print. In response to the court’s question whether images from a digital camera could have been taken to Kinko’s and blown up, the plaintiff stated that he did not know but thought the quality would be poor if it were possible.
The plaintiff testified that he submitted his commercial price list after the defendant questioned the invoice and that he had no agreement on price prior to taking the photographs. The plaintiff also testified that he consulted other 17photographers in the area to make sure his price was not over-inflated or under-inflated.
Marlin Penton stated that he works in his father’s business, has been a professional photographer for fourteen years, is certified as a professional photographer by the Professional Photographer’s of America, and was the vice-president of the Greater New Orleans Professional Photographer’s Association. He testified that a woman from the defendant’s office called him about 3:00 p.m., requesting that photographs be taken for display in court the next day, which he assumed to mean within twenty-four hours. The woman told him that she wanted “the biggest that she could get for display in the courtroom”. He told the woman that he could produce a certain number of 20"x24" and 16"x20" enlargements. The woman did not ask about or discuss how much she wanted to spend on the photographs.
Shortly thereafter, Marlin Penton drove from his office in Kenner and met the defendant’s secretary, two young men, and *689 one older man at approximately 4:30 p.m. in the Central Business District to take the photographs. The older man directed him as to the important details in each photograph.
Marlin Penton described the special camera he used, and why such a camera was necessary to produce large prints with clearly visible details, as requested. He explained that a digital camera image enlarged at Kinko’s could not have produced the large, clear prints requested by the defendant’s secretary:
... [M]ost digital cameras that the consumers use are going to be able to produce an 8 by 10 print. If you’re going to do something that big, you need a big digital camera. Much bigger even what was available to me back then. And, you still have an issue, the quality. The film is still stronger, it’s got more resolution power than digital does right now.
IsMarlin Penton concluded that were this loss of quality acceptable, each image would take a minimum of one hour to print. Thus, enlargements of 24 separate digital images at Kinko’s was not possible given the approximately 14 hours in which to complete the job as requested by the defendant.
Marlin Penton testified that while he knew the photographs were for use in court, he did not learn the name of defendant’s client until well after the assignment was completed.
The defendant offered into evidence the deposition of John C. Meseure, a photographer in Mississippi, as an expert in commercial photography. Meseure stated that he was asked to give an approximate price to take photographs of the wreckage of a car accident, to make 16"x20" and 20"x24" enlargements, and to mount those enlargements. Meseure testified that he charges $250.00 per hour, which includes small prints the customer can use to order enlargements for assignments within a thirty-minute drive from his office in Gulfport, Mississippi. Meseure testified that
[T]he turnaround of enlargements up-charges the cost of those by 100 percent. So our price basically doubles to get things overnight. But, basically, what I would charge — what I would charge for exactly what you’ve got here is in the neighborhood of between $2,800, $2,810, plus seven per cent sales tax in Mississippi. ... That would include your overnight delivery processing....”
In response to defendant’s query as to whether Meseure was aware that Marlin Penton drove from his office in Kenner to the Central Business District to take the photographs, Meseure stated that his rate of $250.00 per hour was applicable for assignments within a driving distance of 30 minutes from his office and beyond a 30 minute driving distance, an upcharge was applicable. He did not, however, specify the amount of the upcharge.
IflAt the close of the trial, the plaintiffs attorney submitted evidence of his fees to the court in the amount of $8,052.78.
On January 17, 2003, the court signed the judgment in favor of the plaintiff in the amount of $1,500.00, finding that the defendant, through his secretary, hired the plaintiff to take photographs for use at trial the next day. The plaintiff completed the assignment, delivered the photographs as requested, and presented the defendant with a bill in the amount of $6,796.37. The court found, however, that the cost of the photographs had been adjudged by the trial court in the Seither case and that the amount constituted a fair price. The trial court also found that the defendant was acting as a mandatary for his client when he contracted with the plaintiff and, accordingly, that the plaintiff in the Seither *690 case is responsible for paying the cost of the photographs.
The plaintiff filed his motion for appeal on January 22, 2003, and this devolutive appeal follows.

Discussion

The plaintiff argues that the trial court erred in failing to address the abuse of process claim and in giving the order taxing costs in the Seither ease res judica-ta effect in the open account suit. We agree.
First, because the trial court failed to address the plaintiffs abuse of process claim, the matter must be remanded for a determination of that issue. See Ratcliff v. Boydell, 93-0362, p. 13 (La.App. 4 Cir. 4/3/96), 674 So.2d 272, 280 (to prove abuse of process, the plaintiff must prove an ulterior motive and willful acts in the use of the process not proper in the regular conduct of litigation).
Next, although the trial court denied the defendant’s exception of res judicata in the open account case, the trial court gave the order taxing costs res \wjudicata effect by finding that the cost of the photographs was a thing adjudged in the Seither case.
Louisiana’s law on res judicata provides in pertinent part:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3)A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
La.Rev.Stat. 13:4232 (emphasis added). That is, “[ujnder the res judicata doctrine, ‘the formula derived in Louisiana jurisprudence states there must be identity in the two suits as to the thing demanded, the demand must be founded on the same cause of action, and the demand must be between the same parties.’ ” Berrigan v. Deutsch, Kerrigan & Stiles, LLP, 2001-0612, p. 5 (La.App. 4 Cir. 1/2/02), 806 So.2d 163, 167, quoting Cuccia v. Jefferson Parish School Board, 613 So.2d 1141, 1142 (La.App. 5 Cir.1993).
In this case, the amount of the plaintiffs invoiced amount for services rendered was challenged by the defendant in two separate motions in the Seither case: the rule to tax costs and the motion to set photographic costs. The order at issue references the rule to tax costs but states that it sets the cost of the photographs. It is not clear which pleading the order specifically addressed. Nevertheless, to the extent an order on either the rule or motion in the Seither case purports to settle the dispute between the plaintiff and defendant in this case, it has Iniio res judicata effect because the plaintiff in this open account case was not a party in the Seither case.
Moreover, the taxing of costs is a summary proceeding and is merely an incident to the main suit. O’Rourke v. Rowan Companies, Inc., 2000-1712, p. 4 (La.App. 3 Cir. 2001), 782 So.2d 1185, 1187, citing *691 Succession of Franz, 109 So.2d 92, 236 La. 781 (1959). The court in Smith v. Roussel, 2000-1672, p. 5 (La.App. 1 Cir. 6/22/01), 808 So.2d 726, 730, held that a rule to tax costs cannot be used to resolve by summary proceeding a dispute between plaintiffs and their expert witness over fees charged.
In Weber v. Charity Hospital at New Orleans, 459 So.2d 705, 708 (La.App. 4th Cir.1984), reversed on other grounds 475 So.2d 1047 (La.1985), an expert witness maintained that he was owed a fee based upon a contractual arrangement with plaintiffs’ attorney. The plaintiffs’ attorney disputed his obligation to pay the bill and filed a “Motion to Set Expert Fees If Any Are Due to Dr. Thomas D. McCaf-fery, Jr.” Dr. McCaffery filed an “Exception of Improper Use of Summary Proceedings” wherein he prayed that the rule be dismissed. This court ruled as follows:
While not improper to ask the trial court to set expert fees as an element of costs to be paid by the party cast, a rule to tax costs is not the proper vehicle to determine the obligations due under a contract. An agreement entered into by a party as to the fee which an expert is to receive, or the statement of the expert as to his charges, or even the actual payment of such a fee to the expert, are not binding on the court and are not criteria to be used by the court in fixing the expert fees to be assessed as costs in the suit. La.Code Civ. Proc. Art.1920; La.Rev.Stat. 13:3666; Wetzka v. Big Three Industries, Inc., 409 So.2d 393 (La.App. 4th Cir.1982); State Department of Highways v. Gordy, 322 So.2d 418 (La.App. 3d Cir.1975). Any fees taxed as costs would not finally determine the contractual issues. Whether a contract exists and whether any obligation remains due under the contract should be decided in an ordinary proceeding between the parties alleged to have contracted.
| ^Plaintiffs’ “Motion to Set Expert Fees ...” manifests an intent to resolve the dispute concerning Dr. McCaffery’s charges by way of a summary rule to tax costs. This was improper. The trial judge correctly maintained the doctor’s exception and dismissed the motion.
Weber, 459 So.2d 705, 708.
Accordingly, in giving the order taxing costs res judicata effect by finding that the cost of the photographs was a thing adjudged in the Seither case, the trial court relied on the improper order in the Seither case which was the result of the improper use of a summary proceeding to resolve the dispute between plaintiff and defendant in this case and issued contradictory rulings: denying the defendant’s exception of res judicata and finding that a reasonable fee for the photographs was a thing adjudged. Moreover, the trial transcript indicates that the trial judge, in rendering judgment in the open account case, felt bound by the $1500.00 amount set by the district judge in the Seither rule to tax costs and, accordingly, to the extent that she felt constrained by the district judge’s earlier ruling, she, in effect, failed to review the evidence before her and make an independent judgment. Accordingly, because the trial judge erred in relying on the order by the district judge in the Seither case and did not independently review the evidence, the judgment is vacated as it pertains to the amount due to the plaintiff and upon remand, the trial judge should determine the reasonable fees due to the plaintiff in the open account suit.
In the interest of judicial economy, we note that the evidence in the record before us does not support the trial judge’s finding that the photographs could have been taken by an amateur photographer and blown up at a copy center. Specifically, *692 the record includes testimony by the plaintiff and his son, Marlin Penton, on the issue of the possible use of digital photography to produce large, |1sclear photographic exhibits, as requested by defendant’s secretary. Both men discounted the possible use of digital images and ink jet enlargements due to the poor quality of the resulting exhibits and the amount of time each image would take. Defendant’s expert witness did not address the issue of digital photography at all. Accordingly, there is no basis in the record to support the trial court’s finding that enlargements could have been made with a digital camera and a quick copy center’s enlargement process.
Moreover, there is no evidence in the record which supports a finding that the defendant was a disclosed agent for Seither and, therefore, not personally liable for the plaintiffs services. While generally speaking, an agent is not responsible to third persons where his principal is disclosed, the agent may make himself personally liable if he expressly or impliedly pledges his own responsibility. Weeden Engineering Corp. v. Hale, 435 So.2d 1158, 1160 (La.App. 3 Cir.1983). In this case, the defendant testified that he directed his secretary to hire a photographer who could produce the photographic exhibits for use the next day at trial. The plaintiff testified that while he knew the photographs were for use in court, he did not learn the name of the client until well after the assignment was completed. The plaintiff directly billed the defendant for its services. Accordingly, based on the record before us, the plaintiffs assumption that defendant was personally responsible for payment based on the defendant’s actions appears reasonable.
Finally, we note that if the trial court determines upon remand that the amount demanded by the plaintiff was correct, then reasonable attorney fees may be awarded. See La.Rev.Stat. 9:2781(A); Montgomery Stire, 1999-3145, p. 6, 769 So.2d 703, 706 (under the precise wording of La.Rev.Stat. 9:2781(A), unless the amount demanded is correct, attorney fees are not due).

Conclusion

For the foregoing reasons, we affirm in part and vacate in part the judgment of the trial court. The judgment in favor of the plaintiff is affirmed and the matter is remanded to the trial court for a determination of the plaintiffs abuse of process claim, the reasonable fees due to the plaintiff, and whether attorneys fees should be awarded to the plaintiff. The defendant is cast with all costs of this appeal.
AFFIRMED IN PART, VACATED IN PART, REMANDED.
ARMSTRONG, C.J., dissents in part.

. Mary Seither, et al. v. Winnebago Industries, Inc., et al., Civil District Court No. 99-17502. The photographs were of an "exemplar buck”, a modified truck frame used to demonstrate possible modifications Winnebago could have made to its vehicle.

. On July 2, 2003, this court ruled that the record was devoid of any evidence to support the claim that Healy filed the motion to determine photographic costs to harass Penton Studio into compromising the outstanding account for photographic services

. During Healy’s testimony in the open account case, the trial court made the following *688 remarks:
THE COURT:
If we already have an order where they’ve setting the cost of the photographs at $1,500.00 why are we here?
MR. DILEO [Penton Studio's Counsel]: Because the $1,500.00 is only as between the defendants in the lawsuit and Mary Seither. It has nothing to do with what is owed by Mr. Healy to Mr. Penton.
THE COURT:
Oh, I think it does matter. Mr. Healy is acting upon Ms. Seither’s behalf. But, I’m going to let you continue, but I doubt if you’re gong to get anymore. I didn’t know. — I never knew when we had the pretrial conference that there was already an order where the court ordered the costs at $1,500.00 — * * ’"That doesn't mean you can charge Ms. Seither $1,500.00 and charge Mr. Healy the balance. It says, the cost. So, the cost is the cost.