| CAG, LLC D/B/A JC PATIN | * | NO. 2020-CA-0325 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| SIMONE WATSON, THOMAS | * | |
| B. WATSON, AND PATRICIA | | FOURTH CIRCUIT |
| A. WATSON | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
FIRST CITY COURT OF NEW ORLEANS
NO. 2019-09908, SECTION "SECTION B"
Honorable Nadine Ramsey, Judge Pro Tem
* * * * * *
**Judge Daniel L. Dysart**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Tiffany G. Chase, Judge Dale N. Atkins)

CHASE, J., CONCURS IN THE RESULT WITH REASONS

ATKINS, J., CONCURS IN THE RESULT FOR THE REASONS ASSIGNED BY JUDGE CHASE

Gregory S. Marsiglia
LOWE STEIN HOFFMAN ALLWEISS & HAUVER, LLP
701 Poydras Street, Suite 3600
New Orleans, LA 70139-7735
    COUNSEL FOR PLAINTIFF/APPELLEE

Jonathan D. Lewis
Charline K. Gipson
Charles Ferrier Zimmer, II
DAVILLIER LAW GROUP, LLC
935 Gravier Street, Suite 1702
New Orleans, LA 70112
    COUNSEL FOR DEFENDANT/APPELLANT

**REVERSED AND REMANDED**

**JANUARY 6, 2021**

This is an appeal of a judgment denying a petition to annul a default judgment and affirming a default judgment against defendants, Thomas B. Watson and Patricia Watson (collectively, the "Watsons"). For the reasons that follow, we reverse the judgment and remand for further proceedings.

**FACTUAL BACKGROUND**

Plaintiff, CAG, LLC, d/b/a J C Patin ("Patin"), a company engaged in the business of home repairs, filed suit against the Watsons for sums allegedly due on an unpaid account. According to Patin's Petition, Simone Watson ("Ms. Watson"), also a defendant herein, hired it to perform renovation and repair work to a residence located at 8501 South Claiborne Avenue, a residence owned by Thomas and Patricia Watson. By invoice dated October 1, 2018, Patin billed Ms. Watson $4,361.91 for materials and labor in connection with its services performed in September 2018. Patin alleged that Ms. Watson failed to make any payments for

1

its work, and on February 27, 2019, counsel for Patin sent a certified letter to Ms. Watson seeking payment on the outstanding invoice.

Patin then filed the instant lawsuit on December 5, 2019, seeking an award of $4,361.19, the amount it alleged was owed under its contract with Ms. Watson. Additionally, Patin sought attorney's fees under La. R.S. 9:2781. Attempts to serve the Watsons were unsuccessful and a special process server was appointed by the trial court. Service was then obtained on the Watsons on January 5, 2020.

On January 10, 2020, Ms. Watson filed a motion for extension of time within which to file an answer. The trial court granted the motion, giving Ms. Watson a 30-day extension of time to file responsive pleadings, or until February 13, 2020.

Patin then filed a Motion for a Preliminary Default on January 22, 2020 on the basis that "the delay for answer is expired and no answer, appearance, or other responsive pleading has been filed" by any of the three defendants. In response, the trial court sent counsel for Patin a notice on January 23, 2020, indicating that the First City Court "does not do preliminary defaults" and indicating that a "Default Judgment Checklist [is] needed in order to obtain" a default judgment.[1] The notice further stated: "Please submit in order for judgment."

---

[1] The Default Judgment Checklist included the following: "Update stamp from the Clerk's Office;" "Affidavit of non-military service;" "Affidavit of correctness of account (Conventional obligations, open accounts, promissory notes, deficiency judgment, negotiable Instruments);" "Judgment;" "Exhibit List;" and "Service return on all defendants named in Judgment."

2

While the record does not reflect a formal response to the trial court's January 23, 2020 notice to Patin, the trial court entered judgment on January 30, 2020. The judgment awarded Patin $4,361.00, legal interest and costs against the Watsons. It further awarded attorney's fees of $1,654.00 against Ms. Watson, alone.

Two weeks later, on February 13, 2020, the Watsons and Ms. Watson filed an answer and reconventional demand against Patin[2] and a Petition to Annul Default Judgment and for Injunctive Relief ("nullity petition"). The nullity petition sought to set aside the default judgment on the basis that it was obtained "through ill practices and miscommunication, which deprived [Ms. Watson and the Watsons] of their legal rights." More particularly, the nullity petition alleged that Ms. Watson had never entered into a contract with Patin for any work, as he never provided an estimate for any work. It further alleged that, while acting *pro se*, Ms. Watson and Thomas Watson went to First City Court to file an extension of time within which to plead. There, they were advised by the clerk of court's processor, Ms. Avia Alonzo, that an extension of time was needed only under Ms. Watson's name. Accordingly, Ms. Watson, alone, filed the motion for extension of time.

---

[2] The reconventional demand alleged that Patin had been referred to Ms. Watson by a company that had installed an irrigation system, but never provided her with an estimate of work to be performed. To the contrary, Patin advised that it would not be able to prepare an estimate until it determined the extent of the repair work needed, which required the removal of some interior walls and insulation. For two days, Patin removed the sheetrock, at which point, Ms. Watson again requested an estimate from Patin. Patin did not respond to this request and, ultimately, Ms. Watson retained another company to perform the repair work and to correct Patin's "substandard work" at higher costs. The reconventional demand sought reimbursement "for the costs of all repairs necessitated by his collective substandard evaluation work, which lead to increased repair costs."

The nullity petition likewise sought injunctive relief in the form of a temporary restraining order enjoining Patin from taking any further steps to collect on the default judgment. The trial court issued an order on February 14, 2020, restraining Patin from pursuing collection efforts until a hearing on March 4, 2020.

The trial court held a hearing on March 4, 2020. In a judgment dated March 5, 2020, the trial court granted the nullity petition in part, and denied it in part. First, the judgment denied the request for a preliminary injunction restraining Patin from executing the January 30 judgment as to Thomas and Patricia Watson and denied it as moot as to Ms. Watson. The judgment then vacated the default judgment only as to Ms. Watson. In all other respects, the judgment was affirmed.

On March 6, 2020, Thomas and Patricia Watson filed a Motion for Suspensive Appeal. Before the Order granting the suspensive appeal was signed on March 12, 2020, Patin filed a "Supplemental Petition for Garnishment" on March 9, 2020, naming as defendant-garnishees Watson Memorial Spiritual Temple of Christ, Liberty Bank and Trust Company, and First Bank and Trust. Patin alleged in the garnishment proceedings that it is the holder of a "final judgment," that "[a]ll delays for appeal had expired" and that "no suspensive appeal ha[d] been taken from the Judgment." The trial court denied the request for a writ of *fieri facias* given that a motion for a suspensive appeal had, in fact, been filed.

On May 28, 2020, Patin again attempted to move forward to collect on the default judgment by filing a Motion for Writ of Garnishment. In this Motion, Patin

contended that the suspensive appeal delay had expired when the motion for suspensive appeal was filed, given that the trial court's original default judgment was dated January 30, 2020 (which Patin alleged was the date the trial court "cited as the reason" for denying the writ of garnishment). It then argued that "the only judgment appealed was that rendered on March 5, 2020, whereas the judgment for which the writ of garnishment is sought is the previous one, dated January 30, 2020." Patin, thus, contended that Thomas and Patricia Watson had not, in fact, appealed the default judgment.

Based on the allegations of the Motion for Writ of Garnishment, the trial court issued an order on June 1, 2020 to serve the garnishees with the supplemental petition for garnishment[3] and to answer the accompanying interrogatories.

On June 22, 2020, having only recently learned of the May 28, 2020 Motion for Writ of Garnishment, Thomas and Patricia Watson filed a Motion for Sanctions and to Vacate the Writ of Garnishment Order. Among the issues raised in that Motion was counsel for Patin's failure to serve notice on their counsel of the May 28, 2020 pleading or to circulate to all counsel a copy of the proposed order. The Motion also raised the issue of Patin's attempts to circumvent the suspensive nature of the appeal by repeatedly seeking a writ of garnishment. In addition to seeking to have the Writ of Garnishment Order vacated, the motion sought sanctions against Patin and its counsel on the basis that their "actions and filings rise to the level of harassment, fraud on the Court, dishonesty and unethical

---

[3] The supplemental petition for garnishment seeking a writ of *fieri facias* was the petition Patin filed on March 9, 2020, which the trial court had previously rejected.

5

behavior in violation of the Louisiana Code of Civil Procedure and the local rules of Court.”

While the Motion for Sanctions was set for a hearing on August 25, 2020, the record before this Court does not contain a ruling on the motion. The appeal was lodged in this Court on July 17, 2020.

After the appeal was lodged, the Watsons filed a Motion to Stay Enforcement of Judgment and Trial Court Proceedings, which Patin has opposed. As will be discussed more fully below, we deny the Motion to Stay as moot. The Watsons perfected a suspensive appeal in this matter, which acts as a stay insofar as the execution of the judgment is suspended. Moreover, an appeal divests the trial court of jurisdiction, with the exception of limited matters, none of which are relevant in this case. Accordingly, the trial court was without authority to issue any order allowing Patin to execute the judgment.

**DISCUSSION**

As a preliminary matter, we address Patin's contention that the judgment at issue in this case is the March 5 judgment – the judgment on the petition for nullity – and not the January 30 default judgment, which Patin maintains is a final judgment that was not appealed. It is true that the Watsons' motion for suspensive appeal seeks to appeal only the March 5 judgment, which affirmed the January 30 default judgment against the Watsons. However, we find that the trial court erred in denying the nullity petition and failing to vacate the January 30 judgment against the Watsons, which implicates the January 30 default judgment.

We recognize that the standard of review of a trial court's ruling on a nullity of judgment action is an abuse of discretion. *Loughlin v. United Servs. Auto. Ass'n*, 17-0109, p. 21 (La. App. 4 Cir. 12/20/17), 233 So.3d 132, 146. "[I]n reviewing a decision of the trial court on a petition for nullity, the issue for the reviewing court is not whether the trial court was right or wrong but whether the trial court's conclusions were reasonable." *Midland Funding LLC v. Kelly*, 11-0659, p. 8 (La. App. 4 Cir. 12/7/11), 81 So.3d 84, 86 (internal citation omitted). Nonetheless, while "appellate courts must accord great weight to the factual findings of the trial judge, these same courts have a duty to determine if the fact finder was justified in his conclusions." *Mart v. Hill*, 505 So.2d 1120, 1127 (La. 1987).

Under the circumstances of this case, after our review of the record, we find that the conclusions drawn by the trial court are not supported by the record. Accordingly, we reverse the trial court's judgment and vacate the January 30 default judgment.[4]

### *Nullity petition*

An action to annul a final judgment may be brought "for vices of either form or substance, as provided in Articles 2002 through 2006." La. C.C.P. art. 2001. A nullity action based on vices of substance may be brought under La. C.C.P. art. 2002, which provides that "[a] final judgment obtained by fraud or ill practices

---

[4] We note that the March 5 judgment also denied the Watsons' request for a preliminary injunction restraining Patin from executing the January 30 judgment. Because we have vacated the January 30 judgment, the request for a preliminary injunction is moot.

may be annulled." La. C.C.P. art. 2004 A. Otherwise, a nullity action based on form is provided by La. C.C.P. art. 2002 A, which provides, in pertinent part, as follows:

> A. A final judgment shall be annulled if it is rendered:
>
> (1) Against an incompetent person not represented as required by law.
>
> (2) Against a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid final default judgment has not been taken.
>
> (3) By a court which does not have jurisdiction over the subject matter of the suit.[5]

The Watsons sought to nullify the January 30 judgment based on La. C.C.P. art. 2004, citing *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067 (La. 1983) in support of their contention that the circumstances of this case require the default judgment to be set aside. Like the instant matter, *Kem Search* involved a suit for alleged amounts owed on an open account. The defendant, an attorney, contacted counsel for the plaintiff, after being served with the petition, advising that he had defenses and would like to discuss settlement before any action was taken in the suit. A couple of months later, the plaintiff pursued and obtained a default judgment. The Louisiana Supreme Court first noted:

> Our jurisprudence sets forth two criteria to determine whether a judgment has been obtained by actionable fraud or ill practices: (1) when the circumstances under which the judgment was rendered show the deprivation of legal rights of the litigant who seeks relief, and (2) when the enforcement of the judgment would be unconscionable and inequitable.

---

[5] It is clear that neither subpart (1) or (3) of this article apply to the instant matter.

8

*Id.* at 1070.

The Court then held that the miscommunication between the parties "unfairly deprived [the defendant] of an opportunity to present his defenses and thereby lost legal rights because of a judgment whose enforcement would be unconscionable and inequitable." *Id.* at 1071. Notably, the Court made clear that the trial court erred in its "erroneous belief that an ill practice may consist only of actual fraud or intentional wrongdoing and that any negligence by the debtor prevents annulment of the judgment." *Id.* at 1072.

The Supreme Court reiterated these principles in *Belle Pass Terminal, Inc. v. Jolin, Inc.*, 01-0149, p. 5 (La. 10/16/01), 800 So.2d 762, 766, and again, in *Power Mktg. Direct, Inc. v. Foster*, 05-2023, p. 16 (La. 9/6/06), 938 So.2d 662, 673, when it made clear that Article 2004 "is not limited to cases of actual fraud or intentional wrongdoing." As the Court noted *Power Mktg*, Article 2004 is "sufficiently broad enough to encompass situations where a "procedure . . . operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable." *Id.*, p. 16, 938 So.2d at 673.

In the instant matter, Ms. Watson and Mr. Watson filed sworn affidavits with their Petition for Nullity, by which each attested that they together went to the clerk of court's office where Ms. Watson questioned the processor on duty "whether the Motion for Extension of Time . . . had to be filed by each Defendant-Petitioner or if only one Defendant-Petitioner was required to file Motion." They

each then attested that "[p]er the instructions provided by the [processor on duty], [Ms. Watson] filed the Motion for Extension of Time in her name alone."

After the extension of time was filed by Ms. Watson, Patin took no efforts to inquire about the Watsons, Ms. Watson's parents. To the contrary, Patin rushed to obtain the default judgment. Indeed, Patin filed its motion for a preliminary default, a step to procure the default judgment, a mere seventeen days after the Watsons were served.

Under these circumstances, we find that the enforcement of the January 30 default judgment would be inequitable. We further find that the circumstances of this case reflect that the Watsons have been unfairly deprived of an opportunity to present their defenses. *See Kem Search*. Moreover, as discussed more fully below, Patin has failed to demonstrate any basis of liability for the Watsons and, on this second basis, the default judgment must be vacated.

### *Propriety of January 30 default judgment*

We recognize that an "action for nullity . . . is not intended as a substitute for an appeal. . . . The purpose of the action is to prevent injustice which cannot be corrected through new trials and appeals." *Loughlin*, 17-0109, p. 22, 233 So.3d 132, 146 (internal citation omitted). However, as we find here, the evidence submitted by Patin at the time of the filing of the default judgment was insufficient to sustain a judgment against the Watsons.

As provided by La. C.C.P. art. 2002 A(2), and recognized by this Court in *Midland Funding*, a default judgment is to be annulled when it is rendered when a

10

valid final default judgment has not been taken.  Under La. C.C.P. art. 4904, which governs default judgments sought in city courts, "[i]n suits in a parish court or a city court, if the defendant fails to answer timely, or if he fails to appear at the trial, **and the plaintiff proves his case**, a final default judgment in favor of plaintiff may be rendered. No preliminary default is necessary.  (Emphasis added).  Article 4904 further provides that, in order to obtain a default judgment, a plaintiff must produce "relevant and competent evidence which establishes a prima facie case." La. C.C.P. art. 4904 B.

As the Louisiana Supreme Court explained in *Arias v. Stolthaven New Orleans, L.L.C*., 08-1111, p. 7 (La. 5/5/09), 9 So.3d 815, 820:

> Confirmation of a default judgment is similar to a trial and requires, with admissible evidence, "proof of the demand sufficient to establish a prima facie case."  The elements of a prima facie case are established with competent evidence, as fully as though each of the allegations in the petition were denied by the defendant. In other words, the plaintiff must present competent evidence that convinces the court that it is probable that he would prevail at trial on the merits.  A plaintiff seeking to confirm a default must prove both the existence and the validity of his claim. A default judgment cannot be different in kind from what is demanded in the petition and the amount of damages must be proven to be properly due.

(Citations omitted).

"When the suit is for a sum due on an open account, promissory note, negotiable instrument, or other conventional obligation, prima facie proof may be submitted by affidavit."  La. C.C.P. art. 4904 B.  Likewise, "[w]hen the sum due is on an open account, promissory note, negotiable instrument, or other conventional

11

obligation, a hearing in open court shall not be required unless the judge in his discretion directs that such a hearing be held." La. C.C.P. art. 4904 C. Clearly, when a suit is not on an open account, a hearing is required. *See*, *e.g.*, *French Mkt. Foods of La., Inc. v. Atterberry Idealease, Inc.*, 07-1035 (La. App. 3 Cir. 1/30/08), 975 So.2d 152, 155.

There can be no dispute in this matter that Patin's suit is a suit on an alleged open account. The Petition expressly states that Patin is seeking "judgment on an open account" and in their appellate brief, it refers to its suit as a "petition on an open account." That this suit is clearly a suit on an open account is further supported by the fact that no hearing was requested or held as allowed by La. C.C.P. art. 4904.

It is thus, clear, that Patin's claims against Ms. Watson arise out of an alleged open account,[6] as Patin alleged in its Petition that Ms. Watson "hired [it] to repair and improve her place of residence." Nowhere in the Petition is there an allegation that Patin entered into a contractual relationship with the Watsons. Absent a contractual relationship with them, Patin cannot assert a claim against the Watsons on an open account. *See Montgomery Stire & Partners, Inc. v. London Livery, Ltd.*, 99-3145, p. 4 (La. App. 4 Cir. 9/20/00), 769 So.2d 703, 706 ("a creditor suing on an open account has the burden of proving that the debtor contracted for the sales on an open account. For there to be an action on an open account, there must necessarily be a contract which gave rise to the debt"); *F.*

---

[6] In the Answer and Reconventional Demand, the existence of an open account is specifically denied.

*Christiana & Co. v. Matt's Grocery, Inc., No. 2*, 95-2073, p. 4 (La. App. 4 Cir. 5/8/96), 674 So.2d 419, 421 ("A creditor suing on an open account must prove that the debtor contracted for the sales on an open account. . . . Where there is no contractual relationship between the parties, there can be no recovery on an open account basis.").

On this basis, Patin failed to produce relevant and competent evidence that establishes a prima facie case against the Watsons. The trial court, thus, erred in granting a default judgment against them. Even considering Patin's claims that the Watsons were "unjustly enriched" by Patin's "uncompensated repairs and improvements" as alleged in the Petition, these claims are not "open account" claims and thus, a hearing would have been required before a default judgment could be rendered. *See French Mkt. Foods of La., Inc. v. Atterberry Idealease, Inc.*, 07-1035, p. 3 (La. App. 3 Cir. 1/30/08), 975 So.2d 152, 155. For this reason, too, the default judgment must be vacated.

We now turn to the Watsons' Motion to Stay. Having vacated the default judgment, that motion is now moot. We note, however, that the suspensive appeal order dated March 12, 2020 suspended all matters in the case pending the appeal. Our jurisprudence is abundantly clear that a suspensive appeal is "one that suspends the effect or the execution of the judgment pending the appeal." *Lobell v. Denn*, 18-0600, p. 3 (La. App. 4 Cir. 12/19/18), --- So.3d ----, ----, 2018 WL 6683527, *writ denied*, 19-0357 (La. 5/20/19), 271 So.3d 1272 (internal citation omitted).

13

Furthermore, the jurisdiction of a trial court is divested upon the entry of an order of appeal, pursuant to La. C.C.P. art. 2088 A, which provides that "[t]he jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal," with the exception of certain matters, none of which apply in this case.[7] We note that one of those exceptions under subpart A of Article 2088 is subpart (7), under which the trial court retains jurisdiction to "[e]xecute or give effect to the judgment when its execution or effect is not suspended by the appeal." This exception is clearly inapplicable here, as the judgment was suspended by an appeal.

Here, the record contains pleadings filed after the March 12, 2020 order of suspensive appeal (those evidencing Patin's attempts to enforce the January 30 default judgment). Because the suspensive appeal order suspended all matters in this case and divested the trial court of jurisdiction after March 12, 2020, it was without authority to consider and/or rule on any pleadings filed after that date.

---

[7] The trial court retains jurisdiction only for those matters which are "not reviewable under the appeal," including the right to: "(1) Allow the taking of a deposition, as provided in Article 1433; (2) Extend the return day of the appeal, as provided in Article 2125; (3) Make, or permit the making of, a written narrative of the facts of the case, as provided in Article 2131; (4) Correct any misstatement, irregularity, informality, or omission of the trial record, as provided in Article 2132; (5) Test the solvency of the surety on the appeal bond as of the date of its filing or subsequently, consider objections to the form, substance, and sufficiency of the appeal bond, and permit the curing thereof, as provided in Articles 5123, 5124, and 5126; (6) Grant an appeal to another party; (7) Execute or give effect to the judgment when its execution or effect is not suspended by the appeal; (8) Enter orders permitting the deposit of sums of money within the meaning of Article 4658 of this Code; (9) Impose the penalties provided by Article 2126, or dismiss the appeal, when the appellant fails to timely pay the estimated costs or the difference between the estimated costs and the actual costs of the appeal; or (10) Set and tax costs and expert witness fees." La. C.C.P. art. 2088 A.

**CONCLUSION**

For the reasons set forth more fully herein, the judgment of the trial court is reversed and the January 30, 2020 default judgment is vacated.  This matter is remanded to the trial court for further proceedings.

**REVERSED AND REMANDED**

15